W. S. MENDENHALL v. J. A. BURNETTE *et al.*

No. 10764.

1. EXECUTION — *after revivor against executor, may, without application to probate court, issue against testator's lands bound by judgment lien.* After a judgment rendered against the debtor in his lifetime has been duly revived against his executors, who by the terms of his will hold the legal title to the lands belonging to his estate, execution may issue on the judgment against such lands as are bound by the lien of the judgment; and no resort to the probate court, either for a classification of the plaintiff's demand or for an order for the sale of the property, is necessary.

2. ———— *but cannot be levied on personalty, nor on lands not subject to judgment lien.* The execution on such a judgment can only be levied on the property bound by the lien of the judgment. It cannot be levied on personal property which passed into the hands of the executors, nor on lands to which the lien did not attach.

3. ———— *where application to district judge would be fruitless, Supreme Court may award mandamus compelling district clerk to issue.* The clerk of the district court having custody of the record of such a judgment, may be compelled by mandamus to issue execution thereon, where it appears that an application to the judge of the district court of the county for an order for such execution would be fruitless.

Original proceedings in mandamus. Opinion filed June 5, 1897. *Peremptory writ awarded.*

*McDermott & Johnson, Asp, Shartel & Cottingham* and *Waggener, Horton & Orr*, for plaintiff.

*Madden & Buckman*, for defendants.

ALLEN, J. This is an action to compel the Clerk of the District Court of Cowley County to issue an execution on a judgment, in favor of the plaintiff against M. L. Read and numerous other parties, rendered in the lifetime of Read, who died soon after its rendition.

The Judge of the District Court and Read's executors are made parties defendant, it being alleged

that, in a suit brought by the executors against the sheriff to restrain the service of a former execution, Burnette, as Judge of the District Court of Cowley County, had held that execution could not lawfully be issued to enforce the judgment. The question as to the propriety of making the Judge of the District Court and the executors parties defendant where no performance of duty is demanded of them, is suggested, but not seriously urged, as a ground for dismissal of the action. Whatever may be said in that respect, it is clear that the principal question in the case is one concerning the duty of the Clerk to issue the execution, and that he is a proper and necessary party to the determination of the case. There certainly is no impropriety in making the executors, whose interests are at stake, also parties to the proceeding, in order that they may be heard and may protect their interests.

The judgment sought to be enforced was rendered on the sixteenth of July, 1891. M. L. Read died on the thirtieth of September, 1891. On the nineteenth of September, 1892, the judgment was revived against W. C. Robinson and S. H. Myton, as executors of Read's will. Prior to that time proceedings in error had been instituted in this court to reverse the judgment, and a bond had been duly given to stay execution. The petition in error was afterwards dismissed. Thereafter, on the eleventh of June, 1896, the plaintiff caused an execution to issue on the judgment, which was levied by the sheriff on various tracts of real estate in Cowley County, owned by Read at the time of his death and on which the judgment was then a lien. The executors, on the ninth of July, 1896, made application to the probate court for authority to sell the same lands for the payment of debts, expenses and legacies, which was granted on the twenty-seventh of July. On the following day, the executors

brought suit in the District Court of Cowley County against the sheriff, to enjoin him from selling the property levied on. On their petition, the probate judge granted a temporary injunction, which the Judge of the District Court, on motion heard before him, refused to vacate, and on a demurrer to the petition in the injunction case, the District Court made a like ruling, overruling the demurrer.

The question involved in the case is a nice one. May a judgment rendered against a person in his lifetime be enforced by execution against his lands after his death, and after revivor against his executors? Very full and satisfactory briefs are presented by counsel, and we have the satisfaction of an able presentation of both sides of the controversy. On behalf of the defendant it is claimed that the jurisdiction of the probate court over the estate of a deceased person is exclusive, except as to property subject to a specific lien. Attention is called to various provisions of the statutes bearing on the management of estates of deceased persons. By the General Statutes of 1889, paragraph 2116, it is provided :

" The probate courts shall    .    .    .    have and exercise the jurisdiction and authority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons."

By the act respecting executors and administrators and the settlement of estates of deceased persons, executors and administrators are required to return an inventory, not only of the personal estate to be administered, but also of the real estate of the deceased.

Section 114 of said act provides :

"As soon as the executor or administrator shall ascertain that the personal estate in his hands will be insufficient to pay all the debts of the deceased, and the charges of administering the estate, he shall apply to the probate court for authority to sell the real estate

of the deceased, or any interest he may have in any real estate, situated within this state, subject to the payment of debts."

By section 80 of the same act, demands against the estate of a deceased person are classified; the fourth class being "judgments rendered against the deceased in his lifetime; but if any such judgments shall be liens upon the real estate of the deceased, and the estate shall be insolvent, such judgments as are liens upon the real estate shall be paid without reference to classification, except the classes of demands mentioned in the first and second subdivisions of this section shall have precedence of such judgments."

Section 86 provides that a demand against an estate may be established by judgment of a court of record and a copy of the judgment exhibited to the probate court, but that the estate shall not be liable for costs in a proceeding commenced within one year after the date of the letters of administration. Provision is also made, in section 134 of the act, for the sale by executors and administrators, under the direction of the probate court, of the lands of the decedent for the payment of his debts, and for the application of the proceeds of such sale.

"§ 134. The money arising from the sale of real estate shall be applied in the following order: *First,* to the discharge of the costs and expenses of the sale and percentage and charges of the executor or administrator thereon, for his administration of the same; *second,* the payment of mortgages and judgments or other liens or claims upon the estate sold, according to their respective priorities, so far as the same operated as a lien on the estate of the deceased at the time of his death, which shall be apportioned and determined by the court; *third,* to the discharge of claims and debts, in the order mentioned in article five of this act."

It is contended that by these provisions the Legis-

lature has confided the entire management of the estate of a deceased person, not incumbered with specific liens at the time of his death, to the probate court; that divided control is not desirable, and was not contemplated by the Legislature, but that it is the policy to vest in one tribunal full jurisdiction, to the end that the property may be best preserved and distributed to those entitled to it or to the proceeds of the sale of it. On the other hand, the plaintiff cites section 439 of the Code of Civil Procedure, which reads:

"If either or both parties die after judgment, and before satisfaction thereof, their representatives, real or personal, or both, as the case may require, may be made parties to the same, in the same manner as is prescribed for reviving actions before judgment; and such judgment may be rendered, and execution awarded, as might or ought to be given or awarded against the representatives, real or personal, or both, of such deceased party."

And also section 512, which provides:

"The death of a person under arrest in an execution does not satisfy the judgment; but an execution may issue thereon as if no arrest had been made."

It is contended by counsel for the plaintiff that ever since the enactment of the statute of 13 Edward I, chapter 45, the English practice has been to revive a judgment by a writ of *scire facias* against the personal representatives, and, thereupon, to award execution absolutely against them, unless they could show a lack of assets; and that the practice of revivor by *scire facias* and of awarding execution against the property of the deceased, still prevails in England and most of the United States. This view seems to be well supported by the authorities cited. Black on Judgments, §§ 490 and 498; Croswell on Executors and Administrators, §§ 701 and 717; 21 Am. & Eng. Encyc. Law,

870; *Denegre v. Haun*, 13 Iowa, 240; *Humphreys v. Lundy*, 37 Mo. 320; *Lavelle v. McCurdy's Executors*, 77 Va. 763; *Frierson v. Harris' Heirs*, 5 Coldw. (Tenn.) 146, 94 Am. Dec. 220.

That the district court has jurisdiction of actions to enforce specific liens on the real property of a deceased person, is well settled, and is not controverted by counsel in this case. *Brenner v. Bigelow*, 8 Kan. 496; *Shoemaker v. Brown*, 10 id. 383; *McLean v. Webster*, 45 id. 644. Indeed, the powers of the probate court would be quite inadequate to the adjustment of all the various liens upon, claims to, and interests in, real estate, which are frequently necessary to be determined in actions for the foreclosure of a mortgage or other specific lien. In this case, the lien of the judgment extends to all of the lands owned by the debtor, at the time of his death, in the county in which the judgment was rendered, and is created by section 419 of the Code of Civil Procedure. That the lien of a judgment on the realty of the judgment debtor continues after his death, is explicitly recognized by the sections of the statute relating to executors and administrators above quoted. It is not merely given preference of payment because the claim was reduced to judgment in the lifetime of the debtor, but the continuing force of the lien is expressly recognized. Read alone, section 439 of the Code would seem to authorize the revivor of a judgment, and an award of a general execution against real or personal property, or both; and section 512 seems to strengthen that construction. The contention of counsel for defendant in error, that the Code must be construed in the light of the other statutes bearing on the subject, and that so far as possible full force and effect must be given to all provisions of the statutes, is undoubtedly sound. The

1. Execution may issue without application to probate court.

task before us is to harmonize as far as possible the provisions of the act relating to executors and administrators with those of the Code.

It has already been settled, by the cases above cited and others following them, that the jurisdiction of the probate court over the estates of deceased persons is not entirely exclusive, but that the district court may take cognizance of such matters in a proper case. We are cited to *Johnson v. Cain* (15 Kan. 532), *Stratton v. McCandless* (27 id. 296), and *Carter v. Christy* (57 id. 492, 46 Pac. Rep. 964), as sustaining the proposition that where jurisdiction of the probate court properly attaches it is exclusive. Other cases are also cited, holding that where there is no lien at the time of death the jurisdiction of the probate court in making distribution of the property is exclusive. *Halsey v. Van Vliet* (27 Kan. 474), *Kothman v. Skaggs* (29 id. 5) and *Markson, Adm'r, v. Kothman* (29 id. 718), are more nearly in point. In *Halsey v. Van Vliet*, it appears that two executions were issued on the judgment after the death of the debtor. Afterward, and more than a year after the date of the judgment, it was revived with the consent of the administrator, the journal entry of revivor closing with the words : "That said judgment and interest, and costs of this proceeding, be paid in due course of administration of said estate." Afterward, and more than five years after the date of the judgment, two other executions were issued. It was held : "*First*, that the language at the close of the order of revivor did not have the effect to prevent the issue of execution, or the collection of the judgment in the ordinary way ; *second*, that the lien of the judgment was not lost, although the judgment was not revived until more than a year after the death of M." But it was also held, that the judgment was dormant when the last execution was issued, and that, there-

fore, the sale under it was a nullity. In *Kothman v. Skaggs*, in speaking of a judgment which was set up by the creditor in an action to foreclose a mortgage, after the death of a debtor, it was said (page 17) by Mr. Justice Valentine :

"The judgment then ceased to be a judgment against any living person, but it did not become a nullity ; it was still a judgment in a limited sense. It was a judgment in abeyance, a dormant judgment, and one that might at any time within one year from Myers' death, or from the appointment of his administrator, be revived against the representatives or successor of the deceased ; and this without their consent. And it might also be so revived at any subsequent time, with the consent of such representatives and successor ; and when it should be revived, it would be revived with all its attributes, with all its force and efficacy, and indeed with everything which it possessed on the day prior to the decease of the judgment debtor."

In *Markson, Adm'r, v. Kothman* it was held, that upon the foreclosure of a mortgage and sale of the mortgaged premises, it was not necessary that the proceeds should be returned into the probate court, but that they would be applied directly by the district court to the satisfaction of the liens on the property, including a judgment lien. Some of the language used in these decisions would seem to imply that a general execution might issue, after a revivor of the judgment, against all of the property of the decedent, without reference to any lien ; but as the court was speaking in each case with reference to a judgment that was a lien on the property in controversy, the authority of the decisions must be limited to the precise point involved. The case of *Achenbach v. Coal Co.* (2 Kan. App. 357), is not in conflict with these decisions. Though some of the language used tends to

support the defendant's contention, it must be considered as applying to the case there under consideration.

Various definitions of the word "lien" are to be found in the books. "A hold or claim which one person has upon the property of another as a security for some debt or charge." Bouvier's Law Dictionary. "A tie that binds property to a debt or claim for its satisfaction." Anderson's Law Dictionary. "A right to possess and retain property until some charge attaching to it is paid or discharged." Burrill's Law Dictionary. "A lien is a charge imposed upon specific property by which it is made security for the performance of an act." California Code of Civil Procedure, § 1180. By giving a judgment creditor a lien on the lands of the debtor within the county, the Legislature must have intended to confer on the creditor the right to resort directly to the property subject to the lien for the payment of the debt. Without this, how could the creditor be said to have any hold on the property? The case of *Kothman v. Skaggs*, supra, holds that the judgment creditor may set up his judgment lien in an action brought by a mortgagee having a junior lien, and that the land may be sold, and the proceeds applied to the payment of the claims in the order of their priority. This being so, if the proceeds of the land should be insufficient to pay the judgment, the sale would needs be for the benefit of the judgment creditor only, and the mortgage lien would be without force or value. We are unable to perceive how the plaintiff's right to proceed against the land can be increased by the action of a third party who chances to hold an inferior incumbrance. Section 134 of the act concerning executors and administrators clearly recognizes the right of creditors having liens, by mortgage, judgment, or otherwise, to payment

in order of priority. The fourth clause of section 80 does not in any manner conflict therewith, for it refers to judgments whether liens on property of the debtor or not, and places all that are not such liens in the fourth class. There can be no sound policy in requiring further proceedings in court after a judgment has been revived and execution authorized. The ordinary process of execution issuing on the judgment is as direct, simple, and inexpensive as any other, and may be employed by the creditor to enforce his lien.

So far as the cases relied on by the plaintiff give countenance to the proposition that a general execution may issue against property on which the judgment-creditor has no lien, we think the language used was *obiter dictum*, and that it was never the purpose of the Legislature to authorize an execution against personal property not seized, nor subject to any specific lien, at the time of the death of the debtor, or against lands on which the judgment was not a lien prior to the debtor's death. The execution authorized is special, to enforce the lien; not general against all the property.

2. Execution may not issue against property not subject to lien.

It is claimed that the action is barred because the judgment was not presented to the probate court for classification within three years; but it necessarily follows from the conclusion reached that it was not necessary for the plaintiff to resort to the probate court at all. He had a right to proceed directly against the land by execution. His right to payment out of the land depended only on the condition of the real estate as to incumbrances. Whatever priority his claim had, he had a right to insist on and enforce. For aught that appears in the case, his is the only claim to which the land is subject.

3. Supreme Court may compel clerk to issue execution, when.

The action pending in the district court to enjoin the sheriff from selling the land, and to which the plaintiff was not a party, does not in any manner affect the plaintiff's right to have another execution issued. *Easter v. Traylor*, 41 Kan. 493.

A peremptory writ will be awarded against the Clerk requiring him to issue execution on the judgment, to be levied on the lands owned by Read, at the time of his death, in Cowley County.