## DENEGRE v. HAUN *et al.*

1. JUDGMENT LIEN. Under the Code of 1851 the lien of a judgment attached to whatever interest the defendant had in real estate, whether such interest appeared of record or not.

2. SAME: LIMITATION: SCIRE FACIAS: REVIVOR. Under the Code of 1851 the lien of a judgment continued in force for ten years, but the right to enforce it by execution existed for but five years, unless revived by *scire facias*.

3. SAME: REVIVOR OF LIEN: SCIRE FACIAS. Where two judgments were recovered, one in 1847 and one in 1848, which subsequently attached under the Code of 1851, as liens upon equitable interests in certain real estate, which judgments remaining unsatisfied in 1854, a new judgment was recovered on them as in an action of debt, for an amount equal to both judgments and costs up to that date, it was held, that the judgments of 1847 and 1848 were merged in the judgment of 1854, and that the liens of the same upon the real estate of the defendant were thereby discharged; and that a sheriff's sale of the premises under the last judgment, made in 1858, conveyed the interest of the defendant, subject to any other liens thereon or rights therein acquired prior to the rendering of such judgment.

4. JUDGMENT IN SCIRE FACIAS. In scire facias no new judgment should be entered; but the court should order that the plaintiff have execution on the judgment described in the writ and for costs.

Denegre v. Haun.

5. LIEN : REVIVOR. While a judgment may be revived there is no revivor of the lien of a judgment on real estate. The revivor of a judgment by *scire facias* creates no new lien.

### Appeal from Clinton District Court.

### MONDAY, JUNE 2.

THE facts are stated in the opinion of the court.

*Grant and Smith* for the appellant, contended that a revivor of the judgment also operated as a revivor of the lien. 2 Bour. Law Dict., " Revive;" " Scire Facias;" 1 Tenn., 388; 7 Verm., 54; *Dickerson* v. *Allison,* 10 Georgia, 537; 3 Bac. Abr., Execution, H; *Clippinger* v. *Miller,* 1 Pen. & W., 61; *Trevor* v. *Ellenberger,* 2 Id., 94; *Penn* v. *Hamilton,* 2 Watts, 53; *Ebright* v. *The Bank,* 1 Id., 399; 3 Bac. Abr., 407; *Knight* v. *Nutt,* 1 T. R., 209; *Phillips* v. *Brown,* 6 Id., 282; *Dixon* v. *Heslop,* Id., 365; *Dougherty's Estate,* 9 Watts & S., 189.

*Baker and Bailey* for the appellee, contended:

1. Upon *scire facias* the order should be that plaintiff have execution. 1 Tidd's Pr., 1047; 3 Bur., 1790; 6 Iowa, 39; 2. That the liens of the old judgments were extinguished by the new judgment. 18 Wend., 621; 7 Cow., 540; 1 Ed. Ch., 609; 2 Id., 165; 6 Paige, 88; 7 Barb., 341; 3 Id., 319; *Hart's Appeal,* 8 Penn., 185; 1 Id., 101; 2 Id., 490; 3 Binn., 443; 7 Penn., 65; 2 Gratt., 44; *Wood* v. *Maine,* 1 G. Greene, 275; *Harrington* v. *Sharp,* 1 G. Greene, 131.

BALDWIN, C. J. — The plaintiff recovered two several judgments in the District Court of Clinton County, against the Hauns and one Samuel Peck — one bearing date September 14, 1847; the other, May 8, 1848. In 1854, these judgments remaining unsatisfied, the plaintiff filed his petition, for the purpose, as it is now claimed, of reviving the right to an execution in each of said causes. Upon this petition, the 19th of September, 1854, a judgment as upon

an action of debt, was entered up for the full amount of both the former judgments, with interests and costs up to that date.

On this last judgment, on the 4th of December, 1858, an execution issued, and the interest of the Hauns' in the real estate in controversy was sold, and purchased by the plaintiff, and deeds executed by the sheriff, in pursuance of the terms of the sale.

On the 10th day of February, 1849, the said Hauns made a contract with the school fund commissioner of said county, by which they purchased the lands sold by said sheriff of said commissioner, paying a portion of the purchase money down, and receiving a bond showing that they were entitled to a deed for the lands thus purchased, when the purchase money was all paid. This bond or contract was assigned to one Townsend Cox, the assignment bearing date October 31st, 1853.

Cox, by his attorney, John P. Cook, assigned this contract on the 25th day of June, 1855, to John B. Turner, and Turner obtained a patent for the lands thus sold, from the State of Iowa, on the 9th day of September, 1855. It appears from the agreed statement of facts, that the assignment by the Hauns to Cox, was in security of a debt due from them to Greenway Brothers & Co., of which firm Cox was a member; that Turner was an agent of the Galena & Chicago Union Railroad Company; that he holds the said lands in trust for said company; that W. G. Haun agreed with John Clark, as the agent of said Railroad company, to sell said land for about $27.00 per acre; that Clarke and Haun went to Davenport, where Cook and Dillon held said assigned contract for Cox, and the money was paid as follows: to Cook and Dillon, as agents of Cox, about $5.000, to the school fund commissioner about $————————, and to Haun $300 to 400, and the contract assigned to Turner, as above stated.

Denegre v. Haun.

The plaintiff by his present proceeding seeks to quiet in time the title to said lands purchased at said sheriff's sale. The respondent, Turner, claims that the said lands were not subject to the lien of plaintiff's judgment, and that no title passed by virtue of the sheriff's deeds. The court below dismissed the complainant's bill for want of equity, and from this order he appeals.

The interest the Hauns acquired by virtue of their purchase from the school fund commissioner, was an equitable one, and, under the law in force when these judgments were obtained, no judgments of the District Court were liens upon the equitable interest of the defendants, unless such interest appeared of record. Under the provisions of the Code of 1851, judgments were liens upon all the real estate owned by the defendant, whether it appeared of record or otherwise. Under the provisions of this law, we suppose the lien of plaintiff attached to whatever interest the Hauns had when this law took effect. From the view we take of the case, we deem it unimportant to determine the point so closely contested by the opposing counsel, as to whether it appears from the pleadings and the admitted statement of the parties that the equity of the Hauns did appear of record or otherwise. Under the provisions of the Code of 1851, § 2489, the lien of a judgment continues in force for the term of ten years only from its rendition. The lien therefore created by the judgments of 1847 and 1848 had expired before the sale by the sheriff, in 1858, unless the lien was continued by virtue of the proceedings in 1854. While the lien of a judgment continues ten years from the date of its rendition, yet, the right to enforce such judgment by execution, exists for but five years, unless such right is revived by *scire facias*. When the plaintiff commenced his proceedings in 1854, the liens of his judgments still existed, but he was without a remedy to enforce them five years having then elapsed after the rendition

of the judgments. In order to enable him to enforce his judgments, he either had to revive the writ, or bring his action of debt upon the judgments. And an important inquiry here arises as to which remedy he resorted to.

The plaintiff alleged, in his petition, after reciting the judgments, that they were unsatisfied; that they had run for more than five years; that he was without remedy to enforce the said judgments; that upon account of the lapse of time, and for no other reason, was he barred from having his executions. He therefore prayed, that the court would render judgment, reviving the former judgments, with interest and costs. In the notice served, the defendants are required to appear and show cause why the plaintiff should not have judgment for the amount of the former judgments, with interest and costs. No reference is made to a prayer for a revivor of the writs of execution.

The judgment is an ordinary judgment, as upon debt. No reference is made to the former judgments, no order made that the writs issue to enforce said judgments, but the amount of the two judgments, with interest and costs, are added together, and a new judgment entered for this sum. Under the petition, the plaintiff, perhaps, would have been entitled to a revivor of the writ, but the judgment obtained is clearly a judgment as upon debt. From this judgment alone, must we determine the effect of plaintiff's proceedings, whether a *scire facias* to revive the writ, or judgment upon a debt. A *scire facias* is a judicial writ issued for the purpose of substantiating and carrying into effect an antecedent judgment. *Jarvis* v. *Rathbone*, Kirby's Comr. Rep., 220. A *scire facias* to revive a judgment is only a continuation of the former suit, and is not an original proceeding. 2 Tidd, 933; 1 T. R., 257. In the case of *Woolston* v. *Gall & Bodine*, 4 Halst. (N. J.) Rep., EWING, C. J., says that "it has been more than once determined that on *scire facias* the justice is to render judgment that execution issue

and for costs, and cannot render a new judgment for the amount of the original debt, and interest and costs thereon." Under a proceeding by *scire facias*, no new judgment should be entered, but the entry should be, that the plaintiff have execution for the judgment mentioned in the *scire facias*, and costs. *Viedenberg* v. *Snyder*, 6 Iowa, 39. Concluding, therefore, that the judgment of 1854 was not one that revived the right to enforce the former judgments, but that it was a judgment as upon a debt, the liens created by the former judgment ceased to exist, and became merged in the new judgment.

· The Hauns, previous to this last judgment, had sold and transferred to Cox all their right, title and interest in the said school lands, and if the plaintiff had any liens, by virtue of the former judgments, against their equity in said land, they were lost, by the effect of the new judgment. Granting, however, that this new judgment was one of revivor only, would this place the plaintiff in any better condition? The statute provides that the lien of the judgments shall continue only ten years from the date of the judgment. While the law provides for the revival of the writ which expires in five years, yet there is no provision allowing the revivor of the lien of the judgment, so as to extend it beyond the limits fixed by the statute. Upon authority, we think that the lien can continue ten years only, and it cannot be extended beyond that time. A revivor of a judgment by *scire facias* creates no new lien, If a plaintiff does not sell the land within ten years, if he wishes to continue his lien without sale, then he must have a fresh judgment docketed before other creditors come in and obtain judgment; otherwise he loses his preference. *Ex parte Penn. Iron Company*, 7 Cow., 540; *Graff* v. *Kiss*, Id., 619; *Little* v. *Hawley*, 9 Wend., 157; *Ex parte Lawrence*, 4 Cowen, 417. In *Purdy* v. *Doyle et al.*, 1 Paige Ch. R., 558, it is held that where a creditor has obtained a lien

upon real estate by judgment at law, if he subsequently brings an action of debt on his judgment, and recovers a new judgment, he will lose his first lien.

The revivor of a judgment by *scire facias* within ten years after the docketing thereof, will not continue or extend the lien of the judgment beyond the ten years, as against purchasers or incumbrancers whose rights accrued subsequent to the entry of the original judgment. *Mower and wife* v. *Kiss et al.*, 6 Paige Ch. R., 88. After ten years from the docketing, a judgment ceases to be a lien on the real estate of the defendant in the judgment, as against *bona fide* purchasers or subsequent incumbrances, and lands purchased after the ten years are elapsed, are held free and discharged of the lien. The ten years commence running at the time of the original docket, and the lien is not saved by subsequent revivors by *scire facias*. *Tufts' Adm.* v. *Tufts*, 18 Wend., 621. The statutes upon which the rights of the parties in this case were adjudicated, read as follows : " All judgments hereafter to be rendered shall cease to be liens or incumbrances on any real estate, against *bona fide* purchasers or subsequent incumbrances, by mortgage, judgment or otherwise, from and after ten years from the time the same shall be docketed." If the liens of the judgments of 1847 and 1848 could not be extended beyond the ten years, then the sale was not made in time to retain to plaintiff the liens. In either view of the case, the judgment of the District Court was correct.

Affirmed.