CLAUS RITZ, Plaintiff and CHARLES FLOTO, Intervener, Appellees v. ANNA REA, Administratrix, etc., Appellant.

**Evidence:** TRANSACTIONS WITH A DECEDENT.  In an action against the assignee of a judgment to enjoin its enforcement, the judgment defendant is prohibited by the statute from testifying that he paid the judgment to the deceased assignor.

**Judgments:** LIEN UPON REAL ESTATE.  A judgment lien as against real property expires in ten years after its entry; and the land can not be sold on execution after expiration of the lien, where the judgment debtor had transferred the property by deed to a third party, though only as security; the debtor having only a right of redemption.

**Fraudulent Conveyances:** EVIDENCE. That the grantee in an absolute
3 deed, though in fact taken as a mortgage, claimed to be the
absolute owner under the conveyance, is not in itself sufficient to
show fraud as to creditors.

**Judgments:** ASSIGNMENT: IMPLIED AUTHORITY OF ATTORNEY. The
4 attorney for a judgment creditor has no implied authority to
assign the judgment.

*Appeal from Cass District Court.*—HON. E. B. WOODRUFF,
Judge.

TUESDAY, APRIL 9, 1912.

SUIT in equity to enjoin the levy of an execution and
the enforcement of a judgment rendered in favor of one
Theo. H. Brown against intervener Floto. The trial court
granted the relief prayed, and defendant appeals.—*Af-
firmed.*

*C. A. Meredith* and *J. B. Rockafellow,* for appellant.

*J. C. Bryant* and *T. J. Bryant,* for appellee.

DEEMER, J.—Intervener, Charles Floto, signed a state-
ment and affidavit authorizing a judgment against himself
and in favor of Theo. H. Brown for the balance due upon
a joint and several promissory note made by Floto and
one Robert Larrington, executed in the year 1891. Upon
this confession, judgment was rendered in favor of Brown
and against Floto in the district court of Cass county,
Iowa, on March 7, 1895, for the sum of $673.87 and costs.
The judgment record shows the following assignment of
this judgment: "October 30, 1895, for value received,
an assignment of the within judgment is hereby made to
Robert Larrington. Theo. H. Brown. By C. S. Patterson,
His Attorney." The Robert Larrington referred to in this
assignment is now deceased, and the defendant, Rea, is ad-

ministratrix of his estate. At defendant's request, and on March 7, 1905, an execution was issued upon this judgment, which was levied upon a lot in the town of Griswold, the legal title to which was in a stranger until February 22, 1905, when intervener, Floto, filed for record a deed to an undivided one-half thereof, dated May 14, 1903. He also filed for record on the same day a deed to the other one-half thereof, which was made by one Paschal on February 20, 1905. On the day when these two deeds were recorded, Floto also filed another deed for the entire property conveying the same to plaintiff, Claus Ritz, who is the father-in-law of Floto. At the same time he also placed of record a bill of sale conveying a lot of personal property to Ritz. These two instruments conveyed to Ritz all the tangible property which Floto then had. Immediately upon the levy of the execution, plaintiff, Ritz, commenced this action to enjoin the sale of the property, and for a decree declaring the judgment not to be a lien upon the property, and for a permanent injunction against the enforcement of the judgment. In this petition Ritz claimed that the judgment was barred by the statute of limitations; that it had been paid by Floto to Brown; that defendant had no title to the judgment; and that between the date of the execution of the statement for the confession which was in December, 1891, and the time the judgment was rendered in March, 1895, the indebtedness had been paid. Defendants took issue with these allegations and they also claimed that the conveyance and bill of sale by Floto to Ritz were fraudulent and void, and made with intent to defraud creditors. Floto then came into the case with a petition of intervention, in which he claimed that he paid Brown the amount of his indebtedness between the time he signed his statement for a confession and the time the judgment was rendered thereon, and that Brown agreed to cancel his indebtedness. The defendant then filed a cross-petition against both plaintiff and intervener, in which she

pleaded her title to the judgment, averred that intervener was insolvent, and that nothing had been paid on the judgment, except the sum of $69.75 on April 8, 1895. She set forth the title to the property levied upon, claimed that it in truth belonged to intervener, Floto, and that the conveyance thereof to Ritz was fraudulent, and void as to creditors of Floto, and she asked that the conveyance be set aside, and that the judgment be declared to be a lien upon the property, and that the same be subjected to the payment thereof.

Plaintiff, Ritz, and intervener, Floto, his wife joining, answered the cross-petition, and averred that: "Between the date of said confession and the entry of said judgment, the indebtedness upon which it was based had been paid to the said Theo. H. Brown, except a balance of $81.44; that subsequent to the rendition of said judgment this defendant, Charles Floto, paid said balance due by an assignment of a judgment in his favor of $69.75 against one Louis Besser, and by giving credit for $11.65 due from the said Brown to this defendant, Floto, on a meat bill on the 8th day of April, 1895." They denied the fraudulent character of the conveyance and further pleaded that an execution issued on the original judgment in March, 1895, by direction of one Chas. Patterson, an attorney for Brown, and that "on said date he settled with the said Patterson, attorney for plaintiff, the balance due on said debt by the assignment of said Besser judgment and by giving credit with a bill of $11.65 due from the said Theo. H. Brown, as aforesaid; the said Charles S. Patterson at the time agreeing to satisfy and cancel said judgment of record." In an amendment to his answer Ritz pleaded that the deed from Floto and wife to him of the property in controversy was made as security by reason of his having signed a note with Floto to the Bank of Griswold for the sum of $2,000, and that this note has never been paid. He also averred that the conveyance was in good faith, and without knowl-

edge that Floto was indebted upon the judgment or for anything else, and that said conveyance was upon a valuable consideration. Defendant then pleaded that both Ritz and Floto were barred by the statute from attacking the judgment, and that, by reason of having made an absolute conveyance to the lot rather than a mortgage, the transaction was fraudulent and void.

Such were the issues in the case, and, upon the testimony adduced, the trial court found for the plaintiff and intervener. The issues, as will be seen, are somewhat complicated, and the case was tried in such a manner that it is difficult to say from competent testimony just what the facts are. Brown and Larrington are both dead, and the testimony of Chas. Patterson, who made the assignment of the judgment to Larrington, was taken in the form of a deposition, part of which only was offered in evidence. Over defendant's objections plaintiff and intervener were permitted to read in evidence a letter from Patterson, in which he claimed to be the owner of the judgment in virtue of an assignment from Brown. This letter seems to have been written March 31, 1905. Letters from some attorneys in Atlantic who represented the defendant to Brown, and Brown's answers thereto, were also offered in evidence, and, if these various letters are to be considered, there seems to have been a misunderstanding between Brown and his attorney, Patterson, and between Patterson and Larrington regarding the ownership of the judgment upon which the execution was issued. Patterson claims that Larrington in his lifetime assigned the judgment to him, and Brown indicates in his letters that the judgment was assigned by him to Larrington, and that Larrington did not assign to Patterson. It is conceded that through a levy upon a judgment held by Floto against one Besser the sum of $69.79 was secured about March 15, 1895, to apply upon the judgment in suit, and it also appears without serious dispute that plaintiff took the deed to the

lot in question to secure him for signing a note with Floto as surety to the Bank of Griswold for the sum of $2,000, this loan having been made on February 22, 1905. It also appears that the execution was not issued upon the judgment by confession until more than ten years after the rendition of the judgment.

I. Floto testified, over objection that his testimony was inadmissible under section 4604 of the Code, that he paid the entire amount of his indebtedness upon which the

1. EVIDENCE: transactions with a decedent.

confession of judgment was rendered, except the amount represented by the Besser judgment to Brown before the judgment was entered, and his wife testified to a payment to him of $300 in March of the year 1894. We are constrained to hold that Floto's testimony as to the payment of the judgment to Brown was inadmissible under section 4604 of the Code, because Larrington was either the assignee of that judgment from Brown, or, if not such assignee, then neither he nor his administratrix have any claim to the judgment.

But we need not trouble with these incidental matters. The lien of the judgment by confession expired before any attempt was made to enforce it by execution, and plaintiff took title to the lot unincumbered by this

2. JUDGMENTS: lien upon real estate.

barred judgment. True that title was only as security, but it was by deed absolute, which deed was subject only to a redemption made by intervener Floto, or by some one having a right to redeem through him. At the time the execution issued, the judgment had ceased to be a lien, and defendant had no right to levy upon any property which was not then owned by the judgment debtor. She could not, under the rule announced in *Albee v. Curtis,* 77 Iowa, 644, and *Lakin v. McCormack,* 81 Iowa, 548, levy upon and sell the land as against a prior lienholder. Plaintiff, Ritz, was at least such a lienholder as that he was entitled to protection.

This was the basis for the decision in *Wood v. Rankin,* 119 Iowa, 448. See, also, *Matless v. Sundin,* 94 Iowa, 111.

In *Stahl v. Roost,* 34 Iowa, 475, it is said: "Our statute makes a judgment a lien upon real estate within the county for ten years from its date (Revision, section 4109); but a judgment continues in force, and is not barred by the statute of limitations until the lapse of twenty years (section 2740). And it is also provided that execution may issue at any time before the judgment is barred (section 3246). While, in an ordinary judgment, the lien ceases after ten years, yet the right to issue execution continues for twenty years; but an execution issued after the ten years would only operate (as at common law) as a lien from the date of the levy. The sale under the execution would be as effectual to pass the title of the judgment defendant as if it had been issued before the expiration of the ten years; the chief difference being that in the one case it would only pass the title that the execution defendants had at the date of the levy of execution or after; while in the other case it would pass the title they held at the date of, or subsequent to the judgment. But, further, we have held that in a mortgage foreclosure judgment the lien of the mortgage continues till the judgment is satisfied or barred. *Hendershott v. Ping,* 24 Iowa, 134. So that in either case, and for the two reasons, the title of the judgment defendant passed to the plaintiff by the sale." In *Lakin's* case, *supra,* we said: "It is claimed to be unreasonable that a party should have the right to an execution and levy on the land, and not the right to sell under the levy. Speaking only with regard to the respective lienholders, the party has the same right to one as the other. If he seeks the advantages of his lien, he should not defer action until it is too late to perfect his rights thereunder. The law fixes the period, and provides the means for rendering his lien effectual. If he neglects action until too late to complete his work within the period, then

the right to make the levy is a barren one; in effect, no right. . . . Our holding has strong support in a number of cases in New York, of which see *Little v. Harvey,* 9 Wend. 157, and *Graff v. Kip,* 1 Edw. Ch. 619; *Tufts v. Tufts,* 18 Wend. 621; *Mower v. Kip,* 6 Paige, 88 (29 Am. Dec. 748); *Ex parte Peru Iron Co.,* 7 Cow. 553. The uniform holding of this court has been in accord with the language of the statute that the lien extends ten years from the date of the judgment. *Denegre v. Haun,* 13 Iowa, 245; *Bertram v. Waterman,* 18 Iowa, 529; *Hendershott v. Ping,* 24 Iowa, 134; *Boyle v. Maroney,* 73 Iowa, 70. In *Albee's* case, *supra,* a judgment lienholder who was not made a party to a foreclosure proceeding attempted to levy upon property sold at sheriff's sale on a judgment which was more than ten years old, and this court held that he was not entitled to enforce his lien against the holder of the sheriff's deed, and in that case it was said: "The equity of redemption of the owner had been foreclosed years before, and the only right the defendants had was a right to redeem from the plaintiff or his grantors, and this was based upon the fact that defendants were not made parties to the decree of foreclosure. They had no other right than the right of redemption. They did not offer to redeem within ten years; and, for that matter, they do not now offer to redeem. Their rights are measured by the statute above cited. It is a lien for the period of ten years from the date of the judgment, and as to prior lienholders the right to redeem is absolutely barred in ten years. *Gower v. Winchester,* 33 Iowa, 303; *Crawford v. Taylor,* 42 Iowa, 260." See, also, *Virden v. Shepard;* 72 Iowa, 546; *Denegre v. Haun,* 13 Iowa, 240; *Boyle v. Maroney,* 73 Iowa, 70. It must be remembered in this connection that plaintiff holds the legal title to the land and that he held it when the lien of the judgment became extinct by limitation. The only right Floto had, if any,

was to redeem, and this right could not be sold, to plaintiff's prejudice.

Moreover, we do not think defendant has satisfactorily established the fraud pleaded by her. About the only thing relied upon to establish such fraud is the fact that, instead of a mortgage to secure himself, plaintiff took an absolute deed, and, when he commenced this action, claimed he was the absolute owner of the land. This in itself does not establish fraud, however. *Fuller v. Griffith,* 91 Iowa, 632. Before trial he amended his petition, and set out the exact nature of the transaction, and fully explained the reason for his conduct in this respect. We are satisfied from the testimony that plaintiff took the conveyance in good faith as security without knowledge of the judgment claimed by defendant.

3. FRAUDULENT CONVEYANCES: evidence.

II. One other thought seems to be conclusive. The assignment of the judgment to Larrington was by an attorney for Brown, and it is not shown that this attorney had any authority to make the assignment. That he had no implied authority to do so is well settled. *Cottrell v. Wheeler,* 89 Iowa, 754; *Harbach v. Colvin,* 73 Iowa, 638; *Bigler v. Toy,* 68 Iowa, 687. Recognizing this difficulty appellant's counsel contend that Brown ratified the act, and that this made the assignment good. For proof of this he is compelled to rely upon letters said to have been written by Brown to the Atlantic attorneys. These letters were, of course, not admissible in evidence, and, while no objection seems to have been made thereto, it is doubtful if they should be considered upon appeal where the action is triable *de novo.* If considered, then defendant is in considerable difficulty because, if this is to be considered as Brown's testimony, such testimony might open the way to a consideration of Floto's testimony as to payment of the judgment. Moreover, there is the same kind of testimony in the rec-

4. JUDGMENTS: assignment: implied authority of attorney.

ord, to wit, letters, showing that Larrington assigned the judgment to the attorney Patterson. We might well plant the decision on the proposition that plaintiff is the holder of the legal title to the land, that he acquired it in good faith and without notice of the judgment; but the record is such as to justify the conclusion that on no theory is defendant entitled to enforce her barred judgment (conceding that she is the owner thereof) against the land.

The decree seems to be correct, and it is *affirmed.*