C. E. COOPER, Guardian, Appellee, v. HATTIE E. OLSON et al., Appellant.

**DIVORCE:** Property Rights—Conveyance by Wife Before Decree— 1 Effect. A former husband cannot, after his former wife has secured a divorce from him, complain that, while the marriage relation existed, his wife, having received a conveyance of land from a trustee who held the title in trust for her, altered the said deed by erasing her own name as grantee and inserted in lieu thereof the name of a person to whom she sold the land, the decree of divorce being silent as to the property rights of the parties.

**EVIDENCE:** Transactions with Deceased—Objections—Waiver. A 2 party objecting to testimony and a witness because incompetent under Sec. 4604, Code, as calling for personal communications on a certain point in issue with a party insane, waives such objection by adopting such testimony ''as his own testimony,'' even though in such adoption he attempts to preserve his former objections. In other words, such party after making such a record will not be permitted to insist on the probative force of that part of such ''communications'' as is favorable to him on a particular issue, and to deny the probative force of that which militates against him on the same point in issue. He must take all or none.

**TRUSTS:** Resulting Trust—Evidence—Sufficiency of. Evidence re- 3 viewed and held that plaintiff, seeking to establish a trust in land because of having furnished the money with which to purchase the same, had not met his burden of proof.

*Appeal from Monona District Court.*—HON. GEORGE JEPSON, Judge.

TUESDAY, FEBRUARY 9, 1915.

REHEARING DENIED FRIDAY, MAY 7, 1915.

ACTION in equity by C. E. Cooper, as the guardian of Ole Olson, an insane person, to quiet title to certain real estate and to set aside and cancel a certain deed and mortgage thereon. By its decree, the trial court set aside the deed to the eighty acres of land in controversy, from the surviving widow and heirs of O. E. Strand to defendant Bernard, cancelled the mortgage given by defendant to Hattie E. Olson, and quieted title in Ole E. Olson as against defendant Hattie E. Olson and as against defendant Henry Bernard, except as to the mortgage on said land to Monona County, which was paid off and satisfied by said Bernard. The decree subrogated Bernard to the rights of the county. The defendants appeal. —*Reversed.*

*J. A. Prichard, Griffin & Page* and *H. B. Walling,* for appellants.

*J. W. Anderson,* for appellee.

PRESTON, J.—The substance of plaintiff's claim is, that his ward, Ole Olson, is an insane person, confined in the hospital at Cherokee; that his ward is the owner of the eighty acres of land described in the petition; that the record title to said land was in Ole Strand; that said Strand having departed this life, a conveyance was fraudulently procured from his heirs, conveying the land to defendant, Hattie E. Olson; that the defendant Bernard knew of and participated in the fraud, and that it was the purpose to defraud the estate of Ole Olson.

The defendants deny any fraud; defendant, Hattie E. Olson, claimed the land as her own; that it was the agreement between her and her husband and Ole Strand that, when the mortgage against the land was paid, it should be conveyed to said Hattie. She further claimed that since the bringing of

the suit she has been divorced from Ole Olson; that she had conveyed the land to Henry Bernard for a valuable consideration, and joined with Bernard in asking to have the title quieted in him; Bernard asked the same relief.

It is conceded by counsel for both sides that the questions involved are of fact, and we think the case turns on substantially one point, and that is whether the $600.00 profit on forty acres of land that had been sold and invested in the eighty acres in controversy belonged to the plaintiff, Ole Olson, or his former wife, the defendant, Hattie E. Olson.

1. DIVORCE: property rights: conveyance by wife before decree: effect.

The trial court was of opinion, although from his finding of facts he seems not to have been very clear, that it belonged to Ole, and that, therefore, there was a resulting trust in favor of Ole Olson. Before plaintiff would be entitled to recover, he must show, the burden being upon him, that such is the fact. If it is not so shown, or if it appears that the money belonged to the defendant, Hattie E. Olson, or there was an agreement, afterwards carried out, that Strand, the person holding the record title to the eighty acres in controversy, should convey the land to the defendant, Hattie, then plaintiff would not be entitled to the decree. There is no dispute between counsel as to the law.

The trial court in its decree made a finding of facts substantially as follows:

"1st: That the land in controversy was purchased from one, Charles Chrisman, the negotiations therefor being carried on by Ole E. Olson, the purchase price thereof being $1,200.00, $600.00 of which was then paid in cash, the deed therefor being made to O. E. Strand, an uncle of Ole E. Olson, the balance of the purchase price being represented by a mortgage to Monona County, and that no part of the purchase price was paid by said O. E. Strand.

"2nd: That the $600.00 paid on said purchase price was

the money of Ole E. Olson, and while there is some competent evidence to show that Ole E. Olson stated that he would give or had given this money to his wife, Hattie E. Olson, the most that can be said is that he would give said money to her, but there never was any completed gift to her of said money.

"3d: That Ole E. Olson shortly after the conveyance of the land to O. E. Strand moved upon the same with his family and lived thereon with them as their homestead for about seven years, or until about eight years ago when he was declared insane, and since then has been confined in the Hospital for the insane at Cherokee, Iowa, and after his commitment his wife, Hattie E. Olson, and family continued to live upon said land as their homestead until about March 1st, 1912.

"4th: That O. E. Strand died about eight years ago without having in any manner sold or conveyed the land in controversy.

"5th: That in the fore part of 1912 Hattie E. Olson sold said land to the defendant, Henry Bernard for $3,900.00, and requested the surviving widow and heirs at law of O. E. Strand to convey said land to her, and that they did execute a deed to her therefor.

"6th: That upon receipt of such deed from the widow and heirs at law of O. E. Strand the name of Hattie E. Olson, the grantee, was erased and the name of the defendant, Henry Bernard, inserted in lieu thereof as grantee, and that the same was done with the knowledge and consent of Henry Bernard who knew that the husband of Hattie E. Olson was then alive and insane. That such change of name and grantees was without any authorization upon the part of the persons who executed said deed.

"7th: That the consideration to be paid by the defendant, Henry Bernard, was the sum of $3,900.00, $2,100.00 thereof having been paid in cash, $600.00 of which was paid by satisfying the mortgage then against said land due and owing to Monona County, that $1,800.00 of said purchase price was rep-

resented by defendant, Henry Bernard, giving to the defendant, Hattie E. Olson, a note for that amount, secured by a mortgage back on the land, which note and mortgage is still owned by the defendant, Hattie E. Olson.

"8th: That in March, 1913, the defendant, Hattie E. Olson, was divorced from her husband Ole E. Olson in an action brought by her against him, and that the relation of husband and wife no longer exists between them; that in the divorce action no alimony was asked for and no mention made nor decree entered as to their property rights.

"9th: That while the evidence is not clear or satisfactory as to the reason for placing the legal title to said land in the name of O. E. Strand, the Court does not find that Ole E. Olson did so in fraud of creditors.

"Upon the foregoing findings of fact the Court had reached the following conclusions of law:

"1st: That O. E. Strand held the title to the land in controversy in trust only, and upon his death whatever title, if any, passed to his surviving widow and heirs the same was burdened with the same trust conditions upon which O. E. Strand held the same.

"2d: That there is no competent evidence of an express trust, but that the trust was a resulting one and for the benefit of the person paying the purchase price.

"3d: That the purchase price of to wit: $600.00 was the money of and paid by Ole E. Olson, and that O. E. Strand held the legal title in trust for him, and that whatever title was held by the surviving widow and heirs of O. E. Strand after his death was held by them in trust for Ole E. Olson and charged with such trust.

"4th: That the deed of conveyance executed by the surviving widow and heirs at law of O. E. Strand to Hattie E. Olson did not convey said land to her free from such trust, and that the defendant, Henry Bernard, by the erasure of the name Hattie E. Olson as grantee and the insertion of his name

as grantee in place thereof gave him no better title than could have been conveyed to Hattie E. Olson by said deed.

"5th: That the note and mortgage given by Henry Bernard to Hattie E. Olson should be held to be without consideration and void, and the mortgage no lien upon said land.

"6th: That the sum paid by the defendant, Henry Bernard, in paying off and satisfying the mortgage to Monona County, together with interest thereon, as provided for by said mortgage, the said defendant, Henry Bernard, should be subrogated to the rights of Monona County, and have a lien against said land for said sum."

We cannot agree with the finding of the trial court as to the second finding or the third conclusion of law, in so far as it holds that the title to the land was held in trust by Strand for the benefit of Ole E. Olson because he paid the money, and we feel that we ought to set out a part of the testimony and so much as bears upon the question indicated.

The record presents a peculiar situation. The plaintiff had the burden to show that the title to the land in question was held by Strand in trust for him, and to prove the alleged fraud. The only evidence introduced by plaintiff in the first instance was witness Hofmann, who testified that the deed executed by the widow and heirs of O. E. Strand, in which the grantee now appears as Henry Bernard, contained the name of Hattie E. Olson, when first received, and that he changed the name of the grantee by erasing the name of Hattie E. Olson and putting in that of Bernard; that this was done at the request either of Mrs. Olson or Campbell, who was acting for her, and that it was done to save making another deed.

On cross-examination of this witness by defendants, the proper foundation was laid for a letter from the widow of O. E. Strand, which was then introduced in evidence, without objection. This letter is as follows:

"Berthoud, Colorado,
April 16, 1913.

Mr. J. A. Prichard, Attorney,
          Onawa, Iowa.

Dear Sir:

Some friends of mine in Monona County has written me that Mrs. Hattie Olson's daughter and husband are trying to get the home away from her. Mr. Ole Olson was Mr. Strand's nephew and if Mr. Strand was living he could tell you as well as I, that the home rightly belongs to Mrs. Olson, for she has always worked hard and has kept up the interest on the home since he was taken to the asylum. Mr. Strand bought her three turkeys one year so she could raise turkeys and make some money that way. I tell you when a man comes home drunk, and makes his wife take care of the team in the middle of the night, it is something awful. Then he used to pound her, and pull her hair out by the handfuls, and even took a horse into the house, and tied it to the bed post. Would make her get up in the morning and do all the chores and get his team ready for him, then she would get breakfast ready, before he would get up. Now, if the place does not belong to her, it ought to. I would never have lived with such a man. We always felt so sorry for her. She is a good, hardworking woman. I wish Mr. Strand was alive to write you what he thinks and knows about it. Could tell you more than I can.

Respectfully,
(Signed) Mrs. Alice Strand."

The Strands made no claim to the land, as shown by the above letter and their willingness to make the deed to Mrs. Olson.

The testimony of plaintiff in chief did not show that plaintiff had paid any of the purchase money on the land in question, but did show only the change in the deed from the Strands to the defendant, Hattie E. Olson. If the land be-

longed to her and she was entitled to a deed from the Strands, the plaintiff could not complain, because he and the defendant, Hattie E. Olson, were divorced, and the decree of divorce was entirely silent as to the property rights of the parties to the divorce case. If the deed was rightfully made out in her name and it was her property, the decree of divorce did not change the situation, but still left it hers. *Cole v. Cole,* 139 Iowa 609.

Before any evidence was taken, the parties stipulated as follows: "This cause coming on for hearing before the court, it is stipulated that defendants may offer their testimony at this time, in so far as they are able, and that the plaintiff shall have until June 1st to file his testimony, and that the same shall be taken in the form of depositions, and when the same are so taken, to be submitted to the court, who shall have authority to examine the same and enter judgment in vacation as though entered during the trial term."

2. EVIDENCE: transactions with deceased: objections: waiver.

Thereupon, the defendants introduced their testimony, and, at the conclusion thereof, the plaintiff, by his attorney, stated:

"The plaintiff at this time makes the witnesses introduced by the defendants his witnesses and adopts their testimony as plaintiff's testimony, so far as the witnesses themselves are competent, not, however, waiving the objections interposed at the time of the taking of defendants' testimony to that part of testimony of any and all witnesses relating to any personal transaction with Ole E. Olson."

Both parties then rested. The defendants were not required to put in all their testimony until plaintiff had made out his case, but it is said by counsel for appellee that all witnesses were examined who had any knowledge of the transaction, and that, had defendants not put all these witnesses on the stand, plaintiff would have been compelled to put some of them on.

So far then as plaintiff claims to have shown that his money paid for the land, it is shown by the defendants' witnesses, and largely by the testimony of the defendant, Hattie E. Olson, which plaintiff says was incompetent because she was incompetent as a witness to testify against her insane husband; plaintiff objected to a part at least of her testimony on that ground.

The appellant insists that if the evidence of defendants' witnesses is competent evidence for the plaintiff and appellee, then it certainly must be competent evidence for defendants and appellants; that appellee could not be permitted to object to the testimony on the ground of its incompetency and then urge that portions of this testimony should be received, because favorable to plaintiff and to establish his case. It has been held that the party objecting to testimony and a witness because incompetent under the statute does not waive the objection by cross-examination. Plaintiff did cross-examine Mrs. Olson, and, to some extent, at least, beyond the proper limits of cross-examination, although defendants did not object on that ground. We think that if the witness is incompetent to testify to personal transactions, all her testimony on that subject is incompetent, and plaintiff may not consider her testimony as to personal communications between herself and her husband which tend to show, if they do, that the $600.00 in money paid on the land was the money of plaintiff, and ignore other testimony on the same subject.

3. TRUSTS: resulting trust: evidence: sufficiency of. It should all be considered together or all rejected, and, if rejected, as before stated, plaintiff has not shown that the $600.00 payment was made with money belonging to plaintiff. But, taking the testimony of the defendant, Hattie E. Olson, all together, with other competent testimony, or excluding all of her testimony as to personal transactions and communications, but considering testimony of other witnesses who are competent, we are satisfied that this $600.00 is not shown to have been money of plaintiff. It does not appear, even from

the testimony of Mrs. Olson, that plaintiff ever had possession of or handled the money. So far as the record shows, when the first forty acres was sold for $1,200.00 and $600.00 retained by Strand for money which had been advanced by him, the $600.00 profit on that land may have been handled by Strand himself in the purchase of the eighty acres in controversy, or by plaintiff's wife, or both plaintiff and his wife. While it is true in a sense, as stated by the trial court, it does not clearly appear that there was a complete delivery to Mrs. Olson, nor does it appear that there was any such delivery or possession of the money by plaintiff. The evidence tends as strongly to show that it was paid to Mrs. Olson as that it was paid to plaintiff. The evidence is not entirely clear at this point on this subject and is somewhat contradictory as to how and by whom the $600.00 profit on the first land sold was paid on the eighty acres in question. But we are satisfied that plaintiff has not met the burden and shown that he paid it so as to be entitled to the decree. Furthermore, it is quite clearly shown that plaintiff himself agreed with the defendant, Hattie E. Olson, that Strand should deed this land to her if she would go back and live with him, and it was so deeded by the heirs of Strand. We shall refer to this in the testimony of Mrs. McCoy and others, later in the opinion. And it does satisfactorily appear by competent and disinterested witnesses that plaintiff stated that the money did belong to his wife, Mrs. Olson, and the evidence also shows that there was an agreement between plaintiff and Mrs. Olson that if she would go back to live with him, the land should be hers, and that Strand should make a deed of it to her, and the deed was so made by Strand's heirs after his death. We shall set out, as briefly as may be, the testimony bearing upon this question. Mrs. Olson testified, without objection:

Q. "When you were married, what property, if any, did you and your husband have?"

A. "I put it in Ole Strand's name so that Ole Olson

couldn't beat me out of my hard earnings. Ole Olson was a drunkard and went through with everything he made. I wanted to have it put in Strand's name. Ole Strand is dead.''

Over objection, she testified:

''The agreement I had with Strand was that he was to convey the land to me. The agreement was that the place was to be put in Strand's name and Strand was to deed it to me whenever I wanted it, whenever I said so. I was to keep up the taxes and interest, pay the principal, and whenever I wanted the place he was to deed it to me. We owed $600.00 on the place we got from Chrisman. When I sold the farm I paid it out of that money. I paid all the taxes excepting twice. Uncle Strand paid one tax and I think Ole paid one. Ole has been in the asylum eight years. I have paid out close to $1,000.00 since I have been on the place, and have paid it out of my earnings made off the place. We lived together on the farm from 1898 to 1905, excepting when he would run me off. He would drive me away and I would go back after a while. I have taken care of the children and supported myself since Ole has been taken away.''

On cross-examination, she says:

''The $600.00 we paid on the Chrisman land was the profit made on the sale of the forty acres. It was bought from Charlie Chrisman. My husband and Charlie Chrisman made the bargain, and it was put in Strand's name to be deeded to me. We bought this farm by Ole Strand paying $600.00 on the land. This was all we paid on the farm. We paid $600.00 for it and got the money of Ole Strand. Then we moved on the farm and improved it a little and sold it for $1,200.00. We took $600.00 of this money to pay Strand the money we borrowed and the other $600.00 was mine. The deed to the

farm we bought of Chrisman was given to Ole E. Strand, who was Ole Olson's uncle.''

The Court: ''I believe I am getting a little mixed up on this. Did she just have the two pieces of land?''

Counsel for Plaintiff: ''They had three. One was lost on a mortgage, and another they sold for $1,200.00, and then the Charlie Chrisman land they bought with part of the $1,200.00. The Chrisman land is the land in dispute. The first piece of land they bought was the forty acres, and that was taken on a loan, and the second piece they got $600.00 from Strand and bought that piece of land and afterwards sold it for $1,200.00, and $600.00 was paid back to Mr. Strand and $600.00 was paid on the Chrisman land.''

Q. ''Why was the deed put in the name of Strand?''

A. ''Olson went through with every cent he made and got in trouble by selling liquor. Ole was afraid of being sued on account of the liquor business. I have paid the interest on the loan ever since Ole was sent away. He allowed it to be sold and I paid the taxes and redeemed it. Strand had been dead a long time before I knew it. I saw Charlie Chrisman when he was making the bargain, but I was not with them when they made the deal.''

Witness Mrs. McCoy, a sister of Mrs. Olson, testifies that she visited them at different times; that after Mr. and Mrs. Olson moved on the Chrisman place she had a conversation with Mr. Olson.

''I talked with Ole E. Olson about this farm and he told me that he had taken $600.00 of money that belonged to Mrs. Olson and paid it on the place and turned it over to Mr. Strand to hold for Mrs. Olson. He told me he used to run a saloon without a license and he was afraid they might get onto him. She had left him, and he said he promised her half the money that they would get from the other place if they sold it if she would come back, and that he had paid $600.00 to Strand

and the other $600.00 to her. I had a conversation with Mr. Strand, and he told me that when she paid the mortgage on the place he was going to see that she got it. That was the day after I had talked with Ole Olson. I do not know whether Ole Olson heard this conversation or not. I couldn't tell how long his mind was bad before he went away. When I was talking with him about the place his mind was all right."

Elmer Olson, a son of plaintiff, twenty-four years of age, and who was only about ten years old at the time the land in question was bought, says he had a conversation with his father, plaintiff, in which he said the land was to be deeded to her; that she had left him several times, and he wanted her to go back.

"He never said anything direct to me. He was talking to my mother. I was present and heard the conversation."

Q. "You heard him say something about its being placed in Strand's name. Now tell the court what you heard him say as to what Strand was to do with the land, if anything?"

A. "He was to deed it to my mother when it was settled up. I can't say exactly, but, as I remember, the $600.00 was to go to my mother."

Mrs. William Cole testified that she is not related to any of the parties; that she had known plaintiff and defendant for twenty-two years; visited them at their home often; that at one time defendant, Mrs. Olson, came to her house with her face and head bleeding in the middle of the night with the child; that "while she was at my place, and about a week after she came, Ole Olson came there. Both of the children were with Mrs. Olson. I heard a conversation between Mr. and Mrs. Olson at that time with relation to her returning home and upon what conditions she was to return. This conversation was a few months before they purchased the Chrisman farm. He begged her to go home with him. He acknowledged he had always mistreated her, but would treat

her better if she would only go home. She refused to do so for some time. He coaxed her all the afternoon to go back with him and she would not give up to go until towards evening. He said if she would come and go back with him that he would give her the place if he ever mistreated her again. She said she did not care to go; that she was ashamed to go back again because the neighbors knew that he had mistreated her. He told her he would go home and do the chores and he would come back that evening and take her home after dark so the neighbors wouldn't see her, and that if he ever mistreated her again that it would be agreed that the uncle should deed the place to her at any time she wanted it in her name. The place they were living on at that time was in the uncle's name, as also was the Chrisman farm they bought shortly afterwards. So she went home with him.''

The evidence shows that plaintiff did mistreat her after the purchase of the Chrisman land and after this conversation.

There is no homestead question in the case, such matter not being relied upon or argued. For the reasons given, we are of opinion that the court erred in holding that there was a resulting trust in favor of the plaintiff and in cancelling the deed and mortgage. The decree should have quieted the title in defendant Bernard. The defendants may have a decree in accordance with the opinion, and such decree may be entered in the district court, or, if appellants so elect, it may be done in this court.—*Reversed.*

DEEMER, C. J., EVANS and WEAVER, JJ., concur.