MONTICELLO STATE BANK, Appellee, v. CARL A. SCHATZ et al., Appellants.

No. 43386.

JULY 31, 1936.

James E. Remley, for appellant.

J. J. Locher and Rhinehart & McLaughlin, for appellee.

HAMILTON, J.—The plaintiff bank, a pioneer banking institution, had been doing business in Monticello, Jones county, Iowa, for half a century. Carl A. Schatz, a pioneer farmer and stockman, had been a customer of this bank for fifty years up until about the time this suit was started in 1934. His line of credit amounted in September, 1929, to $21,650, personal notes. He owned a 200-acre farm in Jones county, a 171-acre farm in Howard county, a town property known as the Ohe house, and another town property, both in Monticello, the latter being his homestead where he had lived for several years prior to this law suit. He sold the Jones county land to his son, E. A. Schatz, and took back a $20,000 mortgage. In September, 1929, and for some time thereafter, the bank held as *collateral* security for the entire line of indebtedness of Carl A. Schatz the

> $20,000 mortgage of E. A. Schatz
> 4,500 mortgage on the Ohe house
> Deed to 171-acre Howard county farm.

His line of indebtedness kept accumulating until on May 18, 1933, he owed the bank $31,888.41, evidenced by several different notes, including one for $620 dated December 4, 1930, which was secured by a mortgage on his homestead.

In the meantime, the son had deeded the Jones county farm back to his father, Carl A. Schatz, and the bank deeded the Howard county farm back to Schatz, and he, in turn, on August 11, 1932, executed to the plaintiff bank

> a $12,000 first mortgage on the 200-acre Jones county farm
> a 4,000 first mortgage on the 171-acre Howard county farm
> an 8,500 second mortgage on both farms.

This second mortgage note did not at this time go into the assets but was carried as collateral, the $20,000 collateral note of E. A. Schatz having been eliminated when he deeded the farm back to his father, this $20,000 mortgage held only as collateral was cancelled. The $12,000 first mortgage note and $4,000 first mortgage note were entered on the liability ledger and carried as direct assets and are included in the total indebtedness of $31,888.41 still outstanding on May 18, 1933.

So matters stood—with, of course, some variation as to the amount of the total indebtedness and denominations of various notes—until October 7, 1933, when there was some kind of settlement. The appellant contends there was a settlement in full of all indebtedness, while plaintiff-appellee claims the settlement did not include the notes in suit and one other $700 item. This is what was actually done, as testified to by the only witness used in the trial, H. M. Carpenter, Jr., cashier of the plaintiff bank, and as shown by the record evidence:

Mr. Carl A. Schatz executed and delivered to the First Farm Land Company (a subsidiary corporation, the entire capital stock of which was owned by the plaintiff bank, as a holding company for the bank) deeds to both farms, said deeds containing an assumption clause as follows: "This deed is made subject to mortgages of record in favor of the Monticello State Bank of Monticello, Iowa, which the grantee assumes and agrees to pay." The deeds were filed for record October 9, 1933. On October 7, 1933, there were notes outstanding and carried as assets on the ledger as follows:

| No. 108146 | $ 620.00 |
|---|---|
| No. 116049 | 12000.00 |
| No. 116050 | 4000.00 |
| No. 119678 | 5500.00 |
| No. 118181 | 2000.00 |
| No. 119679 | 3500.00 |
| No. 119680 | 700.00 |
| No. 119681 | 1000.00 |
| No. 120447 Bal. | 21.52 |
| | $29341.52 |

On this date the ledger shows notes paid:

| | No. 119678 | $5500.00 |
|---|---|---|
| | No. 120447 | 21.52 |
| | | $5521.52 |
| 5521.52 | | |

Balance due $23820.00

(Balance due $23820.00 brought forward)

On this date the collateral note of $8500 which had been renewed was given a number, and entered on the ledger:

No. 121552 $ 8500.00

Total liability $32320.00

On November 16, 1933, the ledger shows notes paid:

| | | |
|---|---|---|
| | No. 119681 | $1000.00 |
| November 20, $1000 paid on No. 119679 | | 1000.00 |
| November 20, $ 500 paid on No. 121552 | | 500.00 |

$2500.00

$2500.00

Balance due $29820.00

On January 29, 1934, there was added to the assets the $4500.00 collateral note, which was given a number and entered on the ledger:

No. 123059 $ 4500.00

Total liability $34320.00

And on this date, January 29, 1934, the ledger shows notes paid:

| | | |
|---|---|---|
| Bal. of No. 119679 | $ 2500.00 |
| No. 118181 | 2000.00 |
| No. 116049 | 12000.00 |
| No. 116050 | 4000.00 |
| Bal. of No. 121552 | 8000.00 |

$28500.00

$28500.00

Balance still due $ 5820.00 as shown by ledger, made up of:

| No. 108146 | 620.00 |
|---|---|
| No. 123059 | 4500.00 |
| No. 119680 | 700.00 |

$ 5820.00

The $700 note has been taken care of by a direct assignment to the bank of the interest of Mrs. Herman Schatz in an estate, which will be paid when said estate is settled, and it is not involved in this litigation.

It will thus be seen that the $4500 note and the $620 note are not shown by the bank ledger to have been paid. This ledger was introduced in evidence by the defendants. It is the contention of the defendants that the two notes in suit were included in the settlement and should have been surrendered and marked paid the same as the other notes. They do not offer a syllable of evidence on their own behalf in support of this claim, and the records of the bank which were introduced by the defendants are to the contrary, and unless the indebtedness evidenced by these two notes is included in the assumption clause in the deeds, appellant must fail in this appeal.

Appellant contends that by the terms of a blanket clause contained in each of the three mortgages, namely, the $12,000 mortgage, the $4,000 mortgage, and the $8,500 mortgage, which were against the two farms at the time they were deeded back to the bank, or rather to the bank's holding company, the First Farm Land Company, said mortgages secured not only the three above mentioned notes which were specifically described in the mortgages, but also covered all other indebtedness of the mortgagor held by said bank at that time, and that therefore under the assumption clause contained in the deeds, the grantee assumed and agreed to pay not only the debts described in the mortgages specifically, but also all other indebtedness secured by said mortgages under said blanket clause as well.

It is admitted by appellee that the $4,500 note sued upon was, up until the 29th day of January, 1934, held as collateral and represented no independent original consideration, that nothing save the right to continue his line of credit represented by other notes at the bank passed to Mr. Schatz. This being true, when the notes were paid for which this collateral security was held, the maker was entitled to his collateral note and to have the mortgage securing the same released and cancelled. It is true that the cashier, Carpenter, testified that "it was understood" that the $4,500 security note and mortgage were to be substituted for notes of like amount that were charged off as paid. This evidence was clearly incompetent as relating to a personal transaction with the deceased—Carpenter

being a stockholder in the plaintiff bank and therefore directly interested in the result of the trial. Code section 11257. First National Bank of Burlington v. Owen, 52 Iowa 107, 2 N. W. 980; In re Will of Martin, 166 Iowa 233, 142 N. W. 74.

The witness was competent to testify that the $4,500 note was held by the bank as collateral security and that it was substituted for the other notes, but he was incompetent to testify to any agreement or understanding for that involved a "personal transaction or communication" with Mr. Schatz who was deceased. There is considerable testimony by the witness Carpenter to the effect that at the time these deeds were delivered to the bank through its holding company, the First Farm Land Company, these two notes in suit and the $700 note herein referred to were not included in the settlement, that this was understood by Mr. Schatz, and that no one ever made any contention that they were paid. As to all of which the witness Carpenter was incompetent to testify. The legal representative of Mr. Schatz, the executor of his estate, is now contending that these two notes in suit were included in the assumption agreement contained in the deeds to the bank, and hence were paid, and since Mr. Schatz is dead and incapable of giving his version of the settlement, the other party to the transaction, Mr. Carpenter, as cashier of, and stockholder in, the plaintiff bank, is incompetent to give any testimony relating to the transaction. Carpenter says there was no contract or agreement entered into at the time. This does not aid the bank. There was a transaction, a settlement of some kind. There had to be some talk. This must be implied. These parties said something to each other. At least one party, the bank, did something by way of accepting deeds, executed and delivered by the other party, Mr. Schatz, and certain notes were charged off the liability ledger as having been paid, and the notes so charged off include the notes which it is admitted were the notes for which the $4,500 note and mortgage were held as collateral security only. It has been held that the act of payment of a note is a personal transaction. Williams v. Brown, 45 Iowa 102; Ritz v. Rea, 155 Iowa 181, 135 N. W. 645.

 Stripped of all incompetent testimony, we have, then, the blanket stipulation in the mortgages as follows: "It is further expressly agreed that this mortgage shall stand as security for any other indebtedness (direct or contingent) that the mortgagee may now hold or in the future during the life of this

mortgage acquire against the said mortgagors, or either, or any of them," and the assumption clause in the deeds, set out above.

It will be noted that this assumption clause is general, not limited or specific. It includes "mortgages of record". Without any competent evidence as to what the parties intended, we are left no choice but to accept the plain meaning of the language used. Therefore, any debt that these mortgages secured was a lien on this land and included in the mortgages which grantee assumed and agreed to pay.

We held in the case of Turnis v. Ballou, 201 Iowa 468, 205 N. W. 746, which involved a stipulation almost identical with the one found in the mortgages in the instant case, that the mortgage was security for other unsecured notes evidencing indebtedness owing by the mortgagor to mortgagee, and therefore, this case governs our action here, and following that case we must hold that the notes in suit, both of which, under any theory of either side, represent indebtedness that existed at the very time the farm mortgages were executed and also at the time the deeds to the farms were delivered, were covered by the stipulation in the mortgages and were liens on the land, and hence included in the assumption agreement. So that the net result is that Mr. Schatz paid all his existing indebtedness to the bank by deeding to the bank his two farms, and, in consideration of such conveyances, the grantee, First Farm Land Company, holding title for the bank, agreed to pay every debt secured by the mortgages of record on the land conveyed. This form of mortgage was used by the bank in all its real estate loans. The cashier, Carpenter, testified that the blanket clause was considered by the bank as sufficient to give the bank a lien on the property covered by the mortgage, to secure not only the notes specifically described in the mortgage, but all other present or future indebtedness owing the bank by the mortgagor. As he expressed it, the mortgages were interlocking, each covering or securing not only the notes described but also notes described in other mortgages given by the same mortgagor on other property, and that the property described in any of these mortgages could be entirely exhausted in payment of any debt owing the bank by the mortgagor, Mr. Schatz. So the bank is now in no position to contend otherwise or to complain because the mortgagor insists that this was likewise his understanding, and when the bank accepts a deed containing an assumption clause broad enough to include the very

debts that the bank says were secured by the mortgages of record on the land, the bank is bound thereby and must be satisfied with what it bargained for.

Appellee contends that the circumstances show that this was never intended. The trouble with this contention is that we cannot allow inferences drawn from circumstances to overcome the written words of the assumption clause.

Appellee further points out that there is no evidence as to value of this property. This omission appears in the testimony of plaintiff also, and the inference is like a two-edged sword. Appellee also says it is not reasonable that the bank would take these two big farms for this debt and allow the old man—a customer of the bank for 50 years—to retain his homestead and the other town property. There is no evidence as to the extent of his other property, if any. If this was all he had, the inference might be the other way. We are unable to see anything in this circumstance especially favorable to appellee's contention.

Appellee contends that inasmuch as counsel for appellant has referred to and made use of portions of the testimony of Carpenter, he has waived his objection to his competency, and the court is permitted to consider all this witness's testimony, and cites the case of Cooper v. Olson, 170 Iowa 141, 150 N. W. 1028. There is some language in that case to the effect that a party is not at liberty to select and appropriate to his own defense testimony of an incompetent witness and ask the court to consider it to the exclusion of that which is unfavorable, and this is quite true, but the opinion further says that the better practice is to consider no part of such testimony, and we are sure that this is much the safer and sounder rule to follow. We have not in this case allowed either side to benefit by such incompetent testimony.

Appellee also intimates that this defense was not Mr. Schatz' idea, that it originated in some other fertile brain. That is beside the point. Mr. Schatz did not pass away from the scene of this earthly turmoil until after he had signed and sworn to an answer setting up the fact that the conveyances were intended as a complete settlement of his indebtedness to the bank, including that evidenced by the two notes in suit, and while this is not evidence, it is a sufficient answer to the insinuative charge that some one else thought of this after he passed away.

■■■ One other observation should be made—that is, the officers of the holding company were the same as those of the bank. While it was a separate corporation, all its stock was owned by the banking corporation, and it had its offices in the bank quarters. It was simply organized as a holding company for the bank and acted in reference to matters which the bank, under its charter, could not lawfully handle. Therefore, full and complete knowledge of this entire transaction, the amount of the indebtedness and everything pertaining to the whole matter of settlement was possessed by the grantee in this deed, and while, from a legal standpoint, the banking corporation was not a party to the assumption agreement and could in law still insist on the foreclosure of the mortgage on the homestead, being the $620 note and mortgage, in equity, as to any judgment rendered against E. A. Schatz, executor, he would be subrogated to the rights of the plaintiff as against the holding company, and entitled to recover for any sums or amounts paid on said judgment; for, as between said executor and the holding company, the latter became principal and the former security, or secondarily liable, and since the holding company is owned by the bank, in essence and effect the bank would gain nothing by the process.

■■■ As to the $4,500 item, the appellee must fail entirely, because, as we have heretofore found, this note was only held as collateral, and upon payment of the notes for which it was held as collateral, the collateral should be surrendered.

The trial court therefore erred in rendering judgment against the executor on the $4,500 note and mortgage and in dismissing said cross-petition. The petition should be dismissed as to the $4,500 note, and in relation to the $620 note and mortgage, if the plaintiff bank insists on letting its judgment and decree stand as to this note and mortgage, then the decree should contain a provision finding that as between the First Farm Land Company and the executor, the relation of principal and surety existed because of the assumption agreement contained in the deeds, and as between the grantor and grantee in said deeds, the grantee became primarily liable and the grantor secondarily liable, and under the doctrine of equitable subrogation and under the provisions of section 11667 of the 1935 Code, the surety is entitled to subrogation to all the rights which the plaintiff has against the one primarily liable, to wit, the First

Farm Land Company. American Surety Company v. State T. & S. Bank, 218 Iowa 1, 254 N. W. 338, 339. And the decree should contain a provision protecting the rights of the defendant, E. A. Schatz, executor, as against the First Farm Land Company for any sums or amounts paid on said judgment by said executor, and he should be subrogated to all the rights of the creditor in all or any of the securities, means or remedies which the creditor has for enforcing payment against said principal. For since we have found that the First Farm Land Company by the assumption clause in the deeds assumed and agreed to pay this indebtedness as between it and the executor, said land company is the principal and primarily liable on said indebtedness, and under the doctrine announced and quoted in the American Surety Company case, supra, at page 4, as follows:

" 'Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability.' Gerseta Corporation v. Equitable Trust Co., 241 N. Y. 418, 150 N. E. 501, 504, 43 A. L. R. 1320.''

And under the allegations of the cross-petition, the executor was entitled to this equitable relief.

In presenting this case, counsel for both sides, apparently by common consent, have considered E. A. Schatz, executor of the estate of Carl A. Schatz, deceased, as appellant, and the plaintiff and the other two defendants as appellees, although there is nothing in the record before us to clearly indicate the relationship the different parties bear to this appeal. In the title, the name of the executor does not appear as substituted defendant or appellant. The names of all three original defendants appear as appellants, and throughout the record, part of the time Attorney James E. Remley is referred to as "attorney for appellants" and at other times, "attorney for appellant," and even the notice of appeal on page 92 of the printed abstract states that it was served *upon*, instead of *by*, E. A. Schatz, executor of the estate of Carl A. Schatz, deceased. We call attention to this by way of admonition to attorneys generally, represent-

ing litigants, in presenting appeals, to the end that they may be more attentive to proofreading their record. No advantage has been taken by appellee of these matters, but it makes the record very confusing to an appellate court. It should be borne in mind by counsel that discussion around the counsel table in the trial court, by which the attorneys and the trial court reach an understanding, but which is not carefully preserved in the record presented to us, quite often leads to a miscarriage of justice. A certain amount of attention to formality and detail in the preservation and presentation of the record to the appellate court is indispensable.

The case is reversed in part and remanded with instructions to enter judgment and decree in harmony with this opinion.—Reversed in part and remanded with instructions.

PARSONS, C. J. and DONEGAN, STIGER, ALBERT, KINTZINGER, and RICHARDS, JJ., concur.