MIDWEST COMMERCIAL CREDIT CO. *v.* MEYERS.

1. GUARANTY—CONTRACTS—NOTES—DEFENSES.

In action by finance company against automobile dealer guaranteeing payment of notes discounted, it was no defense that plaintiff did not purchase certain number of notes, where contract sued on did not obligate it to purchase any specific number.

2. SAME.

> Automobile dealer agreeing to repurchase from finance company any repossessed automobiles for unpaid balance of notes assigned without recourse was liable as absolute guarantor.

3. SAME—DEFENSES—NEGOTIABLE INSTRUMENTS ACT NOT APPLICABLE.

> In action by finance company against automobile dealer on contract of guaranty for unpaid balance of notes purchased by plaintiff, defenses that might arise under negotiable instruments act are not available.

4. SAME—NOTICE—PLEDGES—DEFICIENCY.

> Finance company holding title to automobiles sold on contract as security for payment of notes given in payment and sold to it by automobile dealer, who guaranteed payment, could sell repossessed cars after notifying dealer, and look to him for deficiency.

Error to Wayne; Brennan (Vincent M.), J. Submitted April 16, 1930. (Docket No. 132, Calendar No. 34,768.) Decided June 2, 1930.

Assumpsit by Midwest Commercial Credit Company, a Delaware corporation, against William A. Meyers, doing business as Meyers Auburn Company, on a guaranty. From a summary judgment for plaintiff, defendant brings error. Affirmed.

*Wynn, Zinn & Freimuth,* for plaintiff.

*George P. Coash* (*Henry P. McCartney,* of counsel), for defendant.

BUTZEL, J. Plaintiff discount corporation purchases notes, chattel mortgages, conditional sale or lease contracts, all of which are designated under the general term of "notes" and represent secured deferred payments given by purchasers of new and used motor vehicles. Defendant, wishing to dis-

count such paper, entered into a contract with plaintiff under which the so-called notes, together with the documents, if any, securing them, were purchased without recourse. The contract is as follows:

"COMMERCIAL CREDIT COMPANIES

"Participating Reserve Plan

"City *Detroit* State *Mich.*

"Date Sept. 6, 1928

"Number————

"To MIDWEST COMMERCIAL CREDIT CO.

"To Commercial Credit Company.

"To Commercial Credit Corporation.

"To Commercial Credit Trust.

"To Commercial Credit Company, Inc.

"We desire that you assist us in the sale and distribution of new and used Passenger and Commercial Motor Vehicles by the purchase from time to time of acceptable Notes, Chattel Mortgages, Conditional Sale or Lease Contracts, hereinafter called 'Notes,' representing deferred payments given to us by purchasers at retail of such new and used motor vehicles as evidence of the deferred balance due thereon, said notes to be purchased by you under your regular time sales plan in effect from time to time, but to be endorsed by us 'Without Recourse.'

"In consideration of the purchase by you from us of said acceptable notes endorsed by us 'Without Recourse,' we agree that in the event of repossession of any motor vehicle covered by said notes, either because of failure of the maker to pay said notes or any instalment thereon, or because you deem such repossession necessary for your security, we will, upon demand by you, after such repossession, repurchase from you; wherever located, for cash such Motor Vehicles for the amount of the then unpaid balance of said notes with interest after maturity. It is agreed that title to every such

motor vehicle shall remain with you until you have received payment therefor.

"In cases where you are required by law to keep such Motor Vehicles for a specified period, during which the purchaser may redeem same, or for any other reason, and in those cases where such Motor Vehicles are held by or under the jurisdiction of any court or governmental agency for a period of time for any reason, we agree, if called upon by you to do so, to store such Motor Vehicles during said period without expense to you, and, as soon thereafter as you make demand upon us, we agree to repurchase same for cash from you as above provided.

"We warrant and represent that each of said Notes will correctly describe the Motor Vehicle delivered to the purchaser therein named, and will correctly set forth the amount of the selling price and the amount of the initial payment made us in cash and/or the amount allowed by us for other Motor Vehicles taken in trade, and that if any such Notes incorrectly state such or any other material facts, we will, upon demand, repurchase said Note or Notes from you and pay you an amount equal to the unpaid balance of said Notes.

"It is agreed that you will set up for us a reserve equal to 2% of the amount you pay us for notes representing deferred payments on new cars, and 4% of the amount you pay us for notes representing deferred payments on used cars. As of January 31st, July 31st, and Oct. 31st you will pay us from said reserve such amount thereof as is in excess of 3% of the balance outstanding on notes purchased from us hereunder; provided that no payment need be made by you, hereunder so long as any indebtedness we may owe you at time of settlement above stated is unpaid, but such reserve may be held and applied by you against such indebtedness.

"This agreement shall be irrevocable until all Notes purchased hereunder by you from us shall

have been paid in full to you, and shall inure to the benefit of and bind your and our respective heirs, personal representatives, successors and assigns and any company or organization subsidiary to or affiliated with you to whom you may assign this agreement and/or cause to purchase Notes from us as herein set forth. We hereby waive notice of nonpayment, repossession, acceptance of this contract by you and all other notices to which we might otherwise be entitled by law.

"Witness:

J. W. Peat

Meyers Auburn Co. (Seal)
(Corporate, Individual or
Firm Name.)

"Accepted at *Detroit* on 7th day of September 1928
"By Wm. A. Meyers (Seal)
(Officer, Owner or
Partner.) (Title.)"
"Midwest Commercial Credit (Seal)
"By F. B. Angrist (Seal)."

In pursuance of said contract, plaintiff purchased from defendant three notes secured by chattel mortgages on automobiles. The notes, upon which there was still due $2,370, were indorsed to plaintiff without recourse, in accordance with the contract. Default being made in the payment of notes, plaintiff repossessed itself of the cars and delivered them to defendant, with demand for payment of the balance due. Upon defendant's refusal to make such payment, plaintiff replevied the three cars from defendant, and proceeded to advertise the public sale of them. Plaintiff gave defendant notice of such sale. No bids were received, however, at such sale, and plaintiff thereupon sold the cars at private sale for the sum of $600. Plaintiff then brought suit on defendant's guaranty, claiming damages of $1,770 and interest. After issue joined, plaintiff moved for

summary judgment, and filed an affidavit in proper form, setting forth the facts as herein stated. Defendant filed an affidavit of merits, in which it claimed that the plaintiff had breached the contract through its failure to purchase notes for 30 automobiles which defendant had sold. The written instrument sued upon did not obligate plaintiff to purchase notes for any specific number of cars, nor did the affidavit of merits assert any counterclaim, set-off, loss, or damages on account of plaintiff's breach of such alleged agreement.

Defendant further claimed that, inasmuch as the contract provided that the title to the cars should remain in plaintiff until it had received payment therefor, plaintiff had breached the agreement through disposing of the cars, and thereby released defendant from all further obligations; further, that, inasmuch as the notes were indorsed and accepted by plaintiff without recourse, and there was no provision in the contract charging defendant with any deficiency resulting from the sale of repossessed cars, it could not be held liable. The court rendered a summary judgment for the amount of the balance still due in favor of plaintiff.

Under the second paragraph of the contract, defendant became the absolute guarantor for the repayment of the sums advanced by plaintiff. Defendant attempts to avail itself of defenses that might arise under the negotiable instruments act (2 Comp. Laws 1915, §§ 6040–6231), which are not applicable. Suit was brought upon the guaranty in the contract, under which defendant had agreed to make payments on the notes when due in consideration of the advance by plaintiff of the face of the notes less the discount agreed upon. It was defendant's duty to carry out the terms of this guaranty. *Roberts* v. *Hawkins,* 70

Mich. 566; *National Security & Trust Co.* v. *Niles Invisible Door Check Co.,* 222 Mich. 510; *Somerville* v. *Stevenson,* 224 Mich. 186.

The provision in the contract in regard to the title to every motor vehicle remaining in plaintiff until payment was received therefor was part of the guaranty clause in the second paragraph, and constituted part of plaintiff's security. Plaintiff was not obligated to hold the cars until the indebtedness due plaintiff was paid. Under this theory it might have been obliged to hold them forever. It was only obliged to hold them until they were paid for. It could not get the payment from the purchaser nor from defendant, nor through the public sale that was advertised, and of which defendant received notice. It could only get payment through private sale. This it did, and applied the proceeds upon the indebtedness. In so doing plaintiff had a right to reduce its damages and look to defendant for the balance. *Harrington-Wiard Co.* v. *Blomstrom Manfg. Co.,* 166 Mich. 276; *Sauer* v. *McClintic-Marshall Construction Co.,* 179 Mich. 618.

Judgment affirmed, with costs to plaintiff.

Wiest, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.