SECURITIES INVESTMENT CORPORATION, Appellee, v. M. H. NOLTZE, d/b/a NOLTZE MOTOR COMPANY, Appellant.

No. 43657.

NOVEMBER 24, 1936.

Crary & Crary, for appellee.

L. E. Waggoner and Shull & Stilwill, for appellant.

KINTZINGER, J.—Plaintiff is a finance corporation, with its principal place of business at Omaha, Nebraska, engaged in the business of financing automobile paper and other securities, hav-

ing a branch office in Sioux City, Iowa. The defendant is an automobile dealer engaged in selling automobiles in and around Sioux City, Iowa.

In October, 1934, plaintiff and defendant entered into an agreement under which the plaintiff corporation agreed to purchase notes and mortgages received by the defendant from the sale of cars. At that time the parties also entered into what is known as a "dealer's reserve agreement", under which the dealer agreed to repurchase repossessed cars as provided in said "dealer's reserve agreement", which is hereinafter referred to.

On November 8, 1934, one Roy Moon, of Sioux City, Iowa, purchased of the defendant, Noltze Motor Company, hereinafter called the dealer, on the installment plan, one 1934 Model Auburn automobile. After making a partial payment thereon, Moon executed his note and mortgage in the sum of $1,029.64, to the Noltze Motor Company, for the balance of the purchase price. The dealer, on the same date, sold and assigned said note and mortgage to plaintiff appellee, without recourse. The mortgage provided that in the event of a failure to pay any installment when due, possession and title of the car might be retaken by the mortgagee or its assigns.

The maker of the note and mortgage defaulted in his payments, and the automobile was repossessed and the title taken by appellee on February 26, 1935, and the car at that time was delivered to the dealer at Sioux City.

On February 27, 1935, the car was stolen from the dealer's garage without fault or negligence on its part. The dealer immediately notified appellee of the theft, and was advised by it that the car was covered by insurance, that they had reported it to the adjustment company, and that they would take care of it.

A few weeks thereafter the automobile, burned up, was found by the police or the insurance company near Sioux City. After learning that the car was burned up, the dealer contacted the appellee corporation for the purpose of purchasing the remains of the burned car as salvage. The dealer asked the appellee's manager if he could buy the salvage because they handled Auburn cars and parts, and thought it could be used in their service department. The manager told Mr. Noltze, of appellant company, that he would have to deal with the insurance adjustment company. While in the manager's office, the mana-

ger called the adjustment company by telephone about selling the salvage to the dealer, but was advised that they didn't know what they wanted for the salvage, or that they wanted to sell it. The manager then told Noltze to forget about the salvage, that the adjustment company didn't want to sell it.

At that time the unpaid balance on the note and mortgage amounted to $949. On November 7, 1935, plaintiff appellee commenced an action against the defendant appellant for the balance due on said note and mortgage.

Although this is an action commenced for the balance due upon the purchase price of the car, and although the note and mortgage given to secure such balance was endorsed "without recourse", this action is based upon appellant's alleged liability to pay the balance of the purchase price under the terms of the "dealer's reserve agreement" hereinafter referred to.

The provisions of the "dealer's reserve agreement", material to this case, are the following:

"Dealer will repurchase each repossessed or recovered car after car has been tendered or delivered to dealer at dealer's place of business, at any time, *as is*, subject to protection against conversion, confiscation and loss resulting from collision as outlined below, and *dealer will pay* S. I. C. (appellee) at its office *upon demand* in cash the amount of the remaining unpaid balance due * * * on the note or other obligation. *Until demand followed by actual payment by dealer and delivery of official bill of sale by S. I. C. title to the repossessed car remains in S. I. C. (appellee) and dealer's possession remains merely that of a bailee* with duty to safely store for S. I. C.,

"and redeliver to S. I. C. (appellee) on demand.

"As to the repurchase by dealer of each repossessed or recovered car,

"(a) If such car is returned to dealer within 90 days after a default in payment which has continued for such period, it is understood that the dealer will pay S. I. C. *upon demand, in cash, and, in any event, within 30 days of its return to dealer, the amount of the remaining unpaid balance* due S. I. C. on the obligation. * * *

"Conversion, Confiscation, Collision.

"S. I. C. protects the dealer in the event of conversion or confiscation, not requiring repurchase during the continuance

thereof, in an amount equal to 60% of the sales price value as shown in the 'N. A. D. A. Guide Book' at date of note. The excess amount in case of conversion or confiscation less proportionate share of payments is due from dealer or chargeable to dealers reserve accounts.'' (Italics ours.)

The mortgage on the automobile contains among others the following provisions:

''Purchaser agrees with dealer and assigns to keep the property mortgaged insured against loss by fire and theft for a sum equal to the unpaid amount of this mortgage, with loss payable clause to dealer or assigns. The dealer or assigns may procure such insurance and charge the premiums to purchaser. *The proceeds of any loss under such insurance shall be first applied towards the unpaid part of any indebtedness secured by this mortgage.''*

The record fairly shows that such insurance was secured on the car, and was made payable to the dealer or his assigns. The evidence also fairly shows that the cost of such insurance was included in the note and mortgage executed by the purchaser of the car and later assigned to appellee.

The plaintiff's manager testified he told appellant's agent, after the car was stolen, that the finance company *''have a policy of insurance* on the Moon car for theft and fire.'' He also testified that the balance due his company included the insurance charges on the car, to the actual value thereof. He also said: ''We talked about the fact it had been stolen, the fact it had been found, and reported to the insurance company, and talked about the salvage, the disposition of it, and that the *balance on the account would be cleaned up by the insurance company.''*

The evidence also shows without dispute that no demand was ever made upon appellant for the unpaid balance of the purchase price, before the commencement of this action, and that no delivery of the car after it was stolen was ever made to appellant. The evidence also shows that no bill of sale was ever given or tendered to appellant conveying title to the car or its remains thereafter.

At the close of the evidence, both parties filed a motion for a directed verdict. Plaintiff's motion was sustained, and de-

fendant's motion overruled, and judgment entered against defendant in the sum of $999. Hence the appeal.

Appellant contends that this action is based upon its liability as a bailee because of the provision in the "dealer's reserve agreement" that until demand for the balance due on the car followed by delivery of official bill of sale, the title was in appellee, and the "dealer's possession remains merely that of a bailee with duty to safely store for" appellee and redeliver on demand.

This action, however, is not based upon the theory that the dealer was liable for the loss of the car as a bailee. Appellee contends that the "dealer's reserve agreement" was an *unqualified* agreement on the part of appellant to repurchase and pay the unpaid balance due on the note for the purchase price of the repossessed car, and that appellant is liable thereon as a guarantor.

Appellant contends, however,

(1) That the "dealer's reserve agreement" does not place an unqualified liability upon appellant to pay the balance of the unpaid purchase price, because appellee failed to comply with that part of the "dealer's reserve agreement" which provides that *"until demand followed by * * * delivery of official bill of sale by"* appellee, title to the repossessed car remains in appellee, and dealer's possession remains merely that of a bailee with duty to safely store for appellee and redeliver to appellee on demand.

(2) Appellant also contends that the court erred in failing to direct a verdict in its favor because appellee is estopped from claiming the balance due upon the purchase price of the car, because it was fully protected by insurance against loss by fire and theft.

I.   The dealer's reserve agreement under the heading, "Terms and Rates", provides:

."Dealer will repurchase each repossessed * * * car after car has been tendered or delivered to dealer at dealer's place of business, at any time, as is, subject to protection against conversion * * *, and dealer will pay S. I. C. (appellee) at its office upon demand in cash the amount of the remaining unpaid balance due S. I. C. (appellee) on the note or other obligation. Until demand followed by actual payment by dealer and delivery of official bill of sale by S. I. C. (appellee) title to the repossessed

car remains in S. I. C. and dealer's possession remains merely that of a bailee with duty to safely store for S. I. C. and redeliver to S. I. C. on demand.''

The effect of this provision is that after the repossessed car has been delivered to the dealer, it will pay appellee upon demand the amount of the remaining unpaid balance due on the purchase note. Until such demand is made, and until payment therefor is made by, and an official bill of sale is delivered to, the dealer, the title remains in the appellee, and the dealer's possession remains merely that of a bailee.

██ Paragraph (a) of the reserve agreement provides that if the car is returned to the dealer within ninety days after a default in payment which has continued for such period, the dealer will pay the appellee upon demand the amount of the purchase note remaining unpaid, *and in any event this amount is to be paid within thirty days after the return of the car to the dealer*.

The undisputed evidence shows that this car, after it was repossessed by appellee, was delivered to the appellant on the same day of its repossession. Under this agreement, the dealer was required to pay the balance due on the purchase price within thirty days after delivery of the car to the dealer. The repossessed car having been deliverd to the dealer on February 26, 1935, the balance due was payable on March 28, 1935.

The effect of the dealer's reserve agreement was to make the dealer a guarantor of the payment of any unpaid balance due on the purchase note. Midwest Com. Cred. Co. v. Meyers, 251 Mich. 16, 231 N. W. 49; Walker v. Houston, 215 Cal. 742, 12 Pac. (2d) 952, 87 A. L. R. 937.

██ Under this agreement the dealer was required to repurchase the car in question on March 28, 1935, subject to the condition that title in the car remain in appellee until the repurchase price was paid. This placed him in a similar situation to that of a purchaser of personal property under a conditional sales contract, providing that between the time of delivery and payment of the purchase price, the buyer holds the car simply as a bailee, with the title remaining in seller, such a provision being for the protection of the seller.

Appellant contends, however, that as the car was stolen within thirty days after its repossession and because appellant

held the car as bailee when stolen, it is liable only as a bailee, and that the loss or destruction of the car by theft or fire should fall upon the appellee, the seller, as in an ordinary sales contract. Such contention is made under the rule that, where a conditional sale is made under a contract reserving title in the seller, until payment of the purchase price, the goods are at the seller's risk, and in the event of their loss or destruction without the buyer's fault, the seller must bear the loss. 55 Corpus Juris, 1214, sec. 1202, and cases there cited. Such is the rule in some jurisdictions.

A contrary rule, however, prevails in many jurisdictions under which the buyer, in a conditional sales contract, being ordinarily vested with all the instruments of ownership except title, the risk of loss or injury falls on him, and that he is liable for the purchase price although the property has been injured or destroyed without his fault. 55 Corpus Juris, 1215, sec. 1203, citing many cases supporting this rule.

While no cases have been cited by either party showing the adoption of one rule or the other in this state, we think the question is now settled by the Iowa Sales Act under section 9951 of the Code of 1935, which provides:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that:

"1. *Where delivery of the goods has been made to the buyer*, or to a bailee for the buyer, *in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract*, the goods are at the buyer's risk from the time of such delivery." (Italics ours.)

Delivery of the repossessed car in this case was made to appellant on the very day it was repossessed, and under the provisions of the dealer's reserve agreement, the title to the property was "retained by the seller merely to secure performance by the buyer of his obligations under the contract." It is, therefore, our conclusion that under our statute the risk of loss after the property was delivered to appellant was upon appellant, as purchaser.

Appellant contends, however, that the reserve agreement protects the appellant in the event of a conversion. This is true, but the protection provided for in the agreement is "in an amount *equal to 60% of the sales price value as shown in the 'N. A. D. A. Guide Book'* at date of note." As appellant failed to introduce any evidence of the sale price value in the N. A. D. A. Guide Book on the date of the note, and as there is no evidence of such amount in this record, no such protection has been established, and therefore this provision of the contract cannot avail appellant on this appeal.

For the reasons hereinabove expressed, we are constrained to hold that under the "dealer's reserve agreement", the loss by a conversion or fire falls upon the appellant, unless an estoppel has been established by reason of the insurance on the car as contended in appellant's argument.

■■■ II. In its argument appellant contends that because appellee had insurance on the car, it was its duty to first proceed against the insurance company, and that "plaintiff was estopped by its actions in taking out theft insurance, paid for by the defendant to maintain this action." This contention is made only in appellant's argument. The trouble with it is that no estoppel was pleaded in defendant's answer.

Although there is evidence showing that there was theft insurance upon the car, there is no evidence, and it is not alleged in the pleadings, that appellee ever brought suit, collected, or realized anything upon this insurance.

Under the mortgage, the purchaser agreed with the dealer or assigns to keep the car insured against loss by fire and theft making the loss payable to dealer or assigns. The mortgage also provides that the proceeds of any loss under the insurance shall be first applied toward the unpaid part of any indebtedness secured by the mortgage.

There is no allegation in the petition and there was no evidence tending to show that appellee ever received any amount towards the payment of the loss under the policy. The mere allegation that appellee carried a policy of insurance protecting it against theft, and that plaintiff had a good cause of action against said company for the loss sustained by the theft, and that said policy only protects the plaintiff, cannot be construed into a pleading of estoppel. It is our conclusion that no estoppel was pleaded in this action.

Matters which are available to a party, if at all, as tending to establish an estoppel cannot be established in his behalf unless pleaded as such. Dierksen v. Pahl, 194 Iowa 713, 190 N. W. 423; Ransom v. Stanberry, 22 Iowa 334; Eikenberry v. Edwards, 67 Iowa 14, 24 N. W. 570; Glenn v. Jeffrey, 75 Iowa 20, 39 N. W. 160; Eggleston v. Mason, 84 Iowa 630, 51 N. W. 1; Schofield v. Cooper, 126 Iowa 334, 102 N. W. 110, and see long list of cases supporting this rule in Vol. 2 Callaghan's Digest, p. 2008, Sec. 71.

In Dierksen v. Pahl, 194 Iowa 713, loc. cit. 719, 190 N. W. 423, 426, this court said:

"Appellee cannot avail himself of the claim of estoppel without pleading the same. The mere allegation in his petition * * * that the appellant had taken possession of the premises on or about March 1st, in pursuance of the contract, cannot be construed into a pleading of estoppel, growing out of the continued possession of the premises and the transactions between the parties subsequently to the 1st day of March. * * * But estoppel predicated on these matters cannot avail the appellee, without a plea of estoppel."

As shown by the preceding division of this opinion, there was an obligation under the dealer's reserve agreement upon appellant to repurchase and pay for the balance due upon said car. The purchaser's agreement to carry insurance for the protection of the dealer and assigns would not release appellant from its liability upon that obligation, unless insurance covering the car has been collected by appellee. Nor is there any provision in the dealer's reserve agreement releasing appellant from its liability to appellee under said agreement because of any insurance existing against the car in question. There is no evidence that appellee ever received or collected any amount on the insurance. There is no evidence showing any reason why the insurance company failed to pay the loss. The failure of the insurance company to pay any loss would require the commencement of an action against it thereon, and there is nothing in the reserve agreement or in the chattel mortgage requiring appellee to incur the expense of such litigation.

Appellant contends that appellee is the only party who can recover upon the insurance policy, but by the terms of the mortgage referred to in the foregoing part of this opinion, the loss

covered by the insurance was payable to the *dealer or assigns,* with a further provision that the proceeds of the insurance be applied toward the unpaid part of the indebtedness secured by the mortgage. This would imply that appellee was not the sole party by whom an action upon the policy might be commenced. If appellant paid appellee under its obligation on the contract, it would, no doubt, be subrogated to appellee's rights in the insurance policy. The policy, however, was not introduced in evidence and the terms thereof are not shown by the record.

It is our conclusion that the facts alleged in defendant's answer shown at the trial were insufficient to establish an estoppel.

For the reasons hereinabove expressed, we are constrained to hold that the judgment of the lower court was right, and the same is hereby affirmed.—Affirmed.

PARSONS, C. J., and ALBERT, STIGER, and DONEGAN, JJ., concur.