FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. ARTHUR B. THOMAS et al., Appellees.

No. 43864.

JUNE 15, 1937.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING AND
REHEARING DENIED OCTOBER 1, 1937.

H. C. Churchman, for appellant.

Cook & Cook, for appellees.

PARSONS, J.—This cause was commenced March 27, 1935, by
the First Trust Joint Stock Land Bank of Chicago, plaintiff, for
foreclosure of a mortgage given by John E. Tuey and wife in
August 1925, on 197½ acres of land in Mills County, Iowa, to
secure the payment of a note for $5,000.

The petition alleged that Tuey and wife had conveyed the
land to Arthur B. Thomas, November 29, 1926, and that Thomas

specifically assumed and agreed to pay the mortgage on said land. The petition also alleged the defendant C. H. Dashner, by referee's deed, in accordance with the decree in partition, took sole title to above-described real estate, and by the terms of said deed assumed and agreed to pay the real estate mortgage and note of the plaintiff.

On April 6, 1935, the defendant Dashner filed a motion for continuance, stating in said motion that he was in possession of the real estate as the owner, and came into possession August 20, 1934, by referee's deed; and that he was not in default. This was probably for the purpose of continuance under the moratorium acts.

Plaintiff thereupon filed an amendment to his petition setting forth that about August 20, 1934, referee's report of sale to C. H. Dashner and order approving same were filed in the court in Equity case No. 13588, and at said time two installments payable under the plaintiff's real estate mortgage were past due and delinquent, and that in September, 1934, the plaintiff, with the knowledge of and relying upon the assumption of and agreement to pay its said real estate, as contained in the referee's report of sale and deed, did forego and put off the foreclosure proceeding, and did not commence this suit until the following year, although three installments with interest were past due and unpaid, and did thereby lose its lien upon the 1934 crops grown upon the real estate described in the petition, and suffered the accumulation of additional unpaid real estate taxes that had become a lien on said real estate, and experienced a material deterioration and reduction in the value of its security; that said Dashner in this case filed his motion for continuance, alleging that he was in possession of the real estate as owner thereof, and came into such possession about August 20, 1934, by referee's deed; that the defendant Dashner is now estopped from denying that he accepted the terms of said referee's report of sale dated July 28, 1934, and referee's deed, and that the decree of the court in case No. 13588 entered of record about May 29, 1934, approving report of the referee in said case, entered and filed for record with the clerk of the court on or about August 20, 1934, were final and no appeal was taken therefrom, and that any attempt or supposed correction thereof had or done more than a year after the entry and filing thereof with the clerk of the court is without authority of law and beyond the jurisdiction of

the court or a judge thereof, and was utterly void and of no force or effect upon the record; and prayed as in the original petition.

The result of this action was that on March 9, 1936, decree was entered foreclosing the mortgage as against the real estate and all of the defendants, with personal judgment against Arthur B. Thomas; the question of personal liability of Dashner being especially reserved by the court, the decree reciting:

"Jurisdiction is retained to determine personal liability of defendant C. H. Dashner, and as to question of such liability this cause stands continued and is made without prejudice to any of the rights of the defendant, C. H. Dashner, on the question of personal liability as a subsequent grantee."

Thereafter, upon special execution, said real estate was sold by the sheriff, leaving a deficiency judgment against the defendant Thomas in the sum of $1,300, with interest at 8 per cent per annum from April 18, 1936. Dashner filed an answer alleging simply,

"This answering defendant denies that in the contract between him and the referee in partition, from whom he purchased said real estate, that he ever assumed or agreed to pay any part of the mortgage of the plaintiff on the premises described in plaintiff's petition, and alleges that he took the same only subject to said mortgage and without any assumption of liability on his part to pay the same."

The record further shows that the action in partition was brought by C. H. Dashner, defendant herein, as plaintiff, against A. B. Thomas et al., and prayed for decree confirming title to said land to be in Dashner and Thomas, share and share alike; that said decree ordered the real estate appraised and sold, either at public or private sale, but if at private sale at not less than the appraised price to the best and highest bidder; that after said sale, the proceeds thereof, after paying the mortgage indebtedness and expenses and costs of the action, including the statutory attorney's fees for plaintiff's attorneys, be divided equally between said parties, after paying a reasonable fee for the referees for services rendered, after being fixed by the court. In an amendment to the petition it set forth the beginning of this action, and alleged that in February, 1933, the plaintiff, C.

H. Dashner commenced an action in Mills County, Iowa, court, entitled C. H. Dashner, plaintiff, v. A. B. Thomas, defendant, being case No. 13318, and in said action it was determined that Dashner had a lien against said premises in the sum of $550, with interest at 6 per cent from and after May 9, 1933.

The decree in case No. 13588 was put in evidence. In that the court found that A. B. Thomas was indebted to C. H. Dashner, defendant herein, in the sum of $550, as of May 9, 1933, with interest at 6 per cent per annum from said date, and that in the event said real estate was sold there should be deducted from the share due A. B. Thomas the said sum of $550 with interest at 6 per cent per annum from May 9, 1933; and directed that the referees proceed to determine whether said land could be divided in kind among the parties thereto, and in the event it could not be divided, it should be sold and the proceeds divided, after deducting the mortgage indebtedness, and the costs of the action, including attorneys' fees, equally between the said Dashner and Thomas. It confirmed the title in the plaintiff C. H. Dashner and defendant A. B. Thomas, and ordered the appointment of referees to determine whether the real estate could be equitably divided between the parties, and if it could not be so divided that it be sold at private or public sale, but if at private sale, to the highest bidder therefor, and at not less than the appraised price; but if at public sale, to the best and highest bidder, after giving published notice as required by law for the sale of like property, on sale under execution. The referees were made appraisers in the case, and fixed the value of the premises at $5,400. Said referees subsequently reported the sale of the real estate, that same had been sold to C. H. Dashner for $6,600, payable as follows: (1) By assuming the mortgage with delinquent interest thereon and delinquent taxes on said real estate, totaling approximately $5,000; (2) by a receipt of his share of approximately $800; (3) by the receipt to defendant A. B. Thomas of $550, note, with interest to date; and (4) by paying the costs in said action. A further condition of the sale was that the referees assign to C. H. Dashner all rights and claims to the rentals on said real estate for the year 1934.

Upon presentation of this report to the court, the following order was entered:

"It is therefore hereby ordered by the court that said sale

and the report of sale as made by said referees be and the same is hereby approved and said Referees be authorized and directed to carry out the terms and conditions thereof.

"It is therefore ordered that before making a sale that said Referees post a sale bond in the sum of $600.00.

"It is further ordered that the Referee's Deed submitted herewith be and the same is hereby approved and the Clerk of the Court is hereby ordered to endorse upon said deed the approval of the Court."

The referee's deed offered in evidence as Exhibit 2 recited that in the proceedings in the case of C. H. Dashner v. A. B. Thomas et al., No. 13588, it was decreed by said court that the real estate described be sold on the following terms, to wit:

"At private sale for $6,600.00, on terms as set out in the report of sale filed in said action".

And then S. F. Vinton, Roy Haney and George M. Graves were by the court duly appointed referees to make such sale; and in pursuance of said order and decree they offered the land at private sale, and sold same to C. H. Dashner for the sum of $6,600, he being the best and highest bidder therefor; and that Dashner had complied with the terms of the deed and had paid the money as bid, and that the court on the 8th of August, 1934, approved and confirmed said sale, and by proper order directed the referees to execute to the purchaser a conveyance in due form of law for said real estate, and then said:

"Now, THEREFORE, in consideration of the premises and the said sum of Sixty Six Hundred and no/100 Dollars paid as aforesaid, and in accordance with law and obedience to the order of said Court, S. F. Vinton, Roy Haney, and George M. Graves, referees aforesaid, do hereby sell and convey to the said C. H. Dashner the following described real estate, namely: (Here giving legal description of premises)

"To HAVE AND TO HOLD the same as fully and absolutely as we might and could, by virtue of the premises, sell and convey the same."

This deed was acknowledged and duly approved by the court on the 29th of August, 1934, and recorded on the 11th day of January, 1935, in the records of Mills County, Iowa.

1024

The evidence on the part of defendant was as follows: Haney, one of the referees, testified:

"In all discussions I had with him (Dashner) verbally he always talked subject to the Land Bank of Chicago, or whatever people that held the mortgage."

This was objected to as incompetent, immaterial and irrelevant, the witness incompetent, and not the best evidence.

Haney testified that there was no contract or any talk between him and Mr. Dashner, in which Dashner agreed to assume and pay the mortgage to the Chicago bank. And this was objected to, properly, and motion was made to strike.

Dashner testified that he remembered purchasing from the referees in the partition suit No. 13588, said real estate, and when asked, "What did you agree to do?" it was objected to as incompetent, immaterial and irrelevant, witness incompetent and not the best evidence. Then he answered, "I agreed to pay Mr. Thomas by a note he owed me for his part and the Joint Stock Land Bank. I had them in my written bid to Mr. Haney, subject to the mortgage that they held, and whatever costs, the court costs."

Kenneth R. Cook testified his firm represented the referees in the partition case, No. 13588, and prepared the original Report of Sale, also the supplemental report of sale; that in the original preparation of the original report of sale, one of the terms of the sale was that the real estate should be paid for by Mr. Dashner assuming the mortgage to the First Trust Joint Stock Land Bank of Chicago; that the witness was present during the negotiations between the referees and Mr. Dashner, and the terms of sale as discussed were that Mr. Dashner mark paid the note that he held against Mr. Thomas; that he pay the costs in the partition case; and that he take the land with the bank mortgage upon it. He testified that at no time during the proceedings did he hear any conversation wherein Mr. Dashner agreed to assume the payment of the mortgage to the Stock Land bank.

This testimony was objected to as incompetent, immaterial, and irrelevant, not the best evidence, and the witness incompetent, and it was moved to strike the testimony.

The following order in case No. 13588 appears to have been

entered in the records of the district court of Mills County, Iowa, on the 12th day of December, 1935, to wit:

## "ORDER

"Upon presentation to the Court of the foregoing application, and the Court being fully advised in the premises,

"It is therefore, hereby ordered that the order of Court heretofore made approving the final report of the referees in the above cause, be and the same is hereby set aside and said case is reopened and reinstated upon the docket so that the referees therein may by supplemental report correctly report the sale of said real estate and the terms thereof as made by the said C. H. Dashner."

Pursuant to this order the referees reported among other things said in the report:

"Your referees show the court that in their prior report of sale, without any authority from C. H. Dashner, reported as one of the terms of payment to C. H. Dashner, that he assume the mortgage with delinquent interest thereon, totalling approximately $5,000.00, which statement in said report of sale was incorrect for the reason that the contract with the said C. H. Dashner contained no provisions whatever that the said C. H. Dashner was to assume the payment of the mortgage in question, but that the same was inadvertently inserted in said report of sale as representing the contract between the parties, when in truth and in fact the contract between the undersigned and C. H. Dashner provided only that he take a deed to said real estate subject to the mortgage and delinquent interest thereon."

And on this report the court entered the order of December 16, 1935, as follows:

"It is therefore, hereby ordered by the court that the original report of sale and the supplemental report of sale be and the same are hereby approved, and the action of the referees in making the deed to the purchaser is confirmed."

The order of December 12, 1935, and the filing of the supplemental report of sale, and the order of December 16, 1935, were made after the present case was pending; it having been commenced in March, 1935, and such proceedings not having taken place until December 19, 1935.

The original petition in the foreclosure claims that Dashner took sole title to the real estate, and by the terms of the deed assumed and agreed to pay the real estate mortgage and note of the plaintiff. Evidently in bringing suit the plaintiff had an abstract of title to the real estate, which of course would include the partition suit before its attorneys when the foreclosure suit was commenced. There is no showing of any kind in the record that the plaintiff was notified of this proceeding; no showing that it took any part in the proceedings by which these orders were entered; and no showing that it had any knowledge of them, although the matter of the foreclosure was pending with the plaintiff claiming the assumption of the mortgage by Dashner. This looks a little peculiar to us, especially as there is no showing that anybody but the plaintiff in this case took part in that. Without some such showing it appears to us that it is very doubtful whether or not, even if the application had been made in the time allowed for the correction of the record, it would be binding upon the plaintiff in this case.

So there would be a question about the authority of the court to enter such an order at the time it was entered, even if notice had been given to all persons liable to be affected by the order.

Final decree in the partition case was entered May 29, 1934, and the final order approving referees' report of sale, and directing the issuance of referee's deed, was entered August 28, 1934. The chapter on Vacation of Judgments in the Code of 1935 (section 12787 et seq.) has been the law in this state for some time, and it governs alteration of judgments, modifications, etc., and the time limit fixed by section 12793 generally is within one year after the judgment or order is made.

The next section (12794) provides for the bringing of the party into court. There is no showing in this case that even Thomas was brought into court, let alone this plaintiff. It shows no trial of any kind.

Plaintiff cites upon this proposition Montague v. County, 200 Iowa 534, 205 N. W. 228; Abell v. Partello, 202 Iowa 1236, 211 N. W. 868.

This partition suit was instituted by defendant Dashner. His attorneys, whoever they were, had control of that suit. The court entered the order and decrees therein. Plaintiff's rights, if it has any, attached, it seems to us, when it commenced the

suit in this action. Any order made then in the partition proceeding, to be binding upon the plaintiff, it seems to us, must. have been with notice to the plaintiff.

So we conclude on this branch of the case that the orders entered in the partition case in December, 1935, cannot in any way affect the rights of the plaintiff herein.

This brings us then to the questions as to the liability of the defendant. The deed reciting as it did that it was upon the terms set forth in the report of the referees to the court, incorporated that report into the deed. Among the terms set forth in the report, were: That the sale was for $6,600; and it was also so recited in the deed.

The report of sale was that C. H. Dashner was to pay for such real estate the sum of $6,600; he was to assume the mortgage of approximately $5,000; he was to surrender to Thomas his claim, based on the $550 note. The referees were to assign to Dashner all rights and claims to the rentals on said real estate for the year 1934. The order confirming this report, and ordering the deed issued, was a confirmation by the court of the proceedings. It was a solemn adjudication that the $6,600 was the price to be paid for the land; it was an approval of the deed, and the referees' report upon which it was based, that Dashner had assumed the payment of the mortgage.

So under this three questions arise:

1. What is the effect of the sale being for $6,600? Was Dashner to pay that in full; would he be bound to pay the plaintiff the mortgage, which would be the only mortgage referred to?

2. Will Dashner be held to have assumed the mortgage, i. e., to have taken the deed with the knowledge of its contents and knowledge of its recital, that the sale was made under the conditions set forth in the report?

3. Did the defendant Dashner, by the acceptance of the referee's deed, assume the mortgage involved in this action?

However, as to these questions, another question arises, whether or not the plaintiff herein can maintain this action against the defendant, as the contract was not between him and defendant. Wood v. Smith, 51 Iowa 156, 50 N. W. 581.

■■ It has been held in this state that a covenant by a purchaser of mortgaged premises to pay the mortgage debt may be enforced by the mortgagee, whether such purchaser's imme-

diate grantor was personally liable for the debt or not. Marble Savings Bank v. Mesarvey, 101 Iowa 285, 70 N. W. 198.

It has also been held in Boice v. Coffeen, 158 Iowa 705, 138 N. W. 857, as between the grantor and grantee of property subject to a mortgage, which the grantee assumed and agreed to pay, the grantee becomes the principal debtor and the liability of the maker of the mortgage is secondary. To the same effect is Malanaphy v. Mfg. Co., 125 Iowa 719, 101 N. W. 640, 106 Am. St. Rep. 332.

▌▌▌ This brings us then to the first of the three questions above. What is the effect of the sale being for $6,600? Was Dashner to pay that in full; would he be bound to pay the plaintiff the mortgage, which could be the only mortgage referred to? What are the liabilities of a person who purchases land subject to a mortgage, and that mortgage is included within the purchase price? The case of Wood v. Smith, cited above, holds that an implied agreement arises on the part of the purchaser to pay the mortgage.

In Des Moines J. S. L. Bank v. Allen, 220 Iowa 448, 452, 261 N. W. 912, 915, Judge Kintzinger, writing the opinion, went fully into the question of whether or not it was conclusive that the purchaser taking the land and holding out the encumbrance thereon, but the agreed price was in excess of the encumbrance, personally bound himself. The court laid down the rule that:

"It is the well-settled rule of law that where property is conveyed subject to an existing mortgage, the grantee is not liable for the payment of such mortgage, unless it appears from the evidence that he agreed to assume it."

The court further said on page 455 of 220 Iowa, 261 N. W. 912, 916:

"We think the true rule is that where a grantee takes a conveyance of property subject to a mortgage which is treated as part of the purchase money, the property becomes bound for the payment of the mortgage, but the purchaser is not personally liable for the mortgage debt, unless he specifically agrees to assume the debt."

This case then quotes from Dimmitt v. Johnson, 199 Iowa 966, 969, 203 N. W. 261, 263, as follows:

"There is considerable difficulty, however, in implying a promise when the facts on which the implication is based are in dispute. In the abstract, the appointment to pay a given sum for property upon which there is a mortgage, and the retention of a sufficient amount of that given sum for the purpose of discharging that mortgage, would, if conclusively shown, raise an implied promise between the parties for the benefit of the mortgagee. The fundamental element in both cases is the intent of the parties. The retention of part of the purchase price is merely evidence tending to prove the intent; but there is no difference in the obligation that arises by a purchaser's expressly assuming and promising to pay a mortgage, and the implied agreement that he shall pay, except in the one case the promise is expressed, and in the other it is implied. The mere retention of the money alone is not conclusive proof from which the intent could be implied. It must, in addition, be retained for the purpose of paying the mortgage. How can anyone say what the purpose of the retention is, unless, at the time it was retained, there was an agreement between the parties as to that purpose?"

So under these rules laid down, where reliance is merely upon the purchaser having retained from the amount paid for the transfer of title, sufficient to take up pre-existing encumbrance, it must also be shown what was the intent of the parties at the time. The rule is that the purchaser is *prima facie* liable, but in a contest it depends upon what the real truth is as to the assumption of the mortgage.

The second question for determination,—will Dashner be held to have assumed the mortgage, i. e., to have taken the deed with the knowledge of its contents and knowledge of its recitals, that the sale was made under the conditions set forth in the report? and the third question,—did the defendant Dashner by the acceptance of the referee's deed, assume the mortgage involved in this action? boil down to the question whether or not Dashner, in taking the title as he took it, assumed and agreed to pay the mortgage. There can be no dispute to the proposition that if he did assume the mortgage he is liable for its payment. We do not see how there could be any dispute, if the deed itself by which the defendant Dashner took title, contained the agreement that he assumed the mortgage and agreed to pay it, that he is liable. But bearing in mind, however, that Dashner took title

from the referees; that the referees were acting under the partition suit; that prior to conveying the premises the referees had made a report to the court in which they asked confirmation of the sale, and authority to issue deed, that the premises had been sold to C. H. Dashner for $6,600, payable as follows: By assuming the mortgage and delinquent interest thereon and taxes on said real estate, totalling approximately $5,000. And in their deed recited that they had sold the mortgaged premises at private sale for $6,600 on terms set out in the report of sale filed in said action.

We think without question that this reference incorporates the report of the referees into the deed, and that it is just as binding upon the defendant in this case as if it were recited solely in the deed, that he assumed and agreed to pay all mortgages on the premises. And there is no other mortgage shown on the premises than this one. So we think that he comes entirely within the reasoning of the decisions which hold that where one assumes and agrees to pay, he is bound to pay and becomes a primary debtor. Grimes v. Kelloway, 204 Iowa 1220, 216 N. W. 953, an opinion written by Judge Kindig, holds that a purchaser of land, who contracts, both in his contract of purchase and in the deed of conveyance accepted by him, to assume and agrees to pay an existing mortgage on the land thereby becomes the principal debtor on such obligation, both as to the holder of the obligation and as to *all* prior parties obligated thereon.

In Liljedahl v. Glassgow, 190 Iowa 827, 180 N. W. 870, it was held that the purchaser of land, for a valuable consideration, who, *in this state*, accepts a deed which is blank as to grantee, and which provides that the grantee assumes and agrees to pay *in this state* the mortgage encumbrance on the land, becomes personally bound to pay said encumbrance, even though he passes said blank and unrecorded deed to a subsequent purchaser, and even though the land is situated in a foreign state which by statute provides that a deed blank as to grantee is *void*. *The agreement to pay said debt is a personal obligation and is governed solely by the laws of this state.*

It is held in Hawn v. Malone, 188 Iowa 439, 176 N. W. 393, that a vendee who takes conveyances of land subject to specified existing mortgages thereon must pay such mortgages if the amount thereof was retained by him out of the purchase price,

and parol evidence is admissible to show the actual consideration paid.

In this case it was the actual agreement to pay the mortgage, treating the deed and the report as we must, and must so conclude; and there was also actual evidence to show that the mortgage was unpaid, and hence we think the defendant Dashner in this case is liable.

 In reference to the order procured in the partition action, long after the case had been decided, on the 12th of December, 1935, we think the court was without authority to enter this order, at least after the rights of the plaintiff herein had attached; the plaintiff's suit was then pending, the plaintiff had refrained from commencing proceedings to take the crops of 1934. That order, we think, was irregularly entered, and has no effect in this case.

So we are of the opinion that the defendant Dashner is liable in this case, for the reason that he himself procured partition of the land; procured the appointment of referees; he bid $6,600; he profited by it; he got the rent of 1934; he received payment of his note for $550; he claims there was $800 allowed to himself as his share of the sale of the land; that he took the deed himself, filed it for record; he used it in this case against the plaintiff to procure a continuance under the moratorium statute, and cannot now hold, after this action has been commenced in the way it was, and the proceedings had therein, that he is not liable. That the defendant Dashner is not estopped to urge such defense here would be an ill-advised conclusion, to say the least. There is no showing in the record as to the orders entered in 1935 calling for a new report of the referees as to service on anybody, as to whether or not it was one of those things attorneys sometimes slip in when they can see a judge alone and make an explanation, and the rights of parties are thereby cut off. The rights of the plaintiff in this case had been asserted prior to the entry of this order.

We are therefore of the opinion that so far as the plaintiff is concerned, the orders for a new report were invalid and void. In Hayes v. Betts, 227 Ala. 630, 151 So. 692, 95 A. L. R. 1484, a very similar case arose in reference to the conclusiveness of decrees entered. In the cited case the matter was in probate, the land was sold under the decree of a probate court affirming the sale of mortgaged premises. The defendant undertook a repudi-

ation of his agreement in a suit against him by the mortgagee for foreclosure and recovery of a deficiency judgment, and the court held that a purchaser of mortgaged land of a decedent, who agrees as a part of his bid at a sale of the land under an order of the probate court for division among heirs, to pay the mortgage, cannot defeat liability for a deficiency judgment in a suit by the mortgagee, on the ground that the mortgage indebtedness was never presented and filed as a claim against the estate of the decedent. And in such case the mortgagee might enforce the purchaser's obligation, although there is no consideration moving from him to the purchaser or to the administrator or to the heirs.

█ █ █ For all these reasons we are of the opinion that the decree in this case should have been that the defendant Dashner was liable for the $1,300 deficiency and judgment should have been entered against him, and that this case should be returned to the district court to enter a decree in accordance with this opinion.—Reversed and remanded.

HAMILTON, SAGER, KINTZINGER, and DONEGAN, JJ., concur.

## SUPPLEMENTAL OPINION.

PARSONS, J.—An inspection of the records in this case shows that the defendants, Thomas and Dashner, owned as tenants in common 240 acres of land in Mills County; that the mortgage of plaintiff covered only 197½ acres of said land; that the defendant Dashner began an action in partition against Thomas, and in said action Dashner prayed that the real estate be appraised by three disinterested appraisers to be appointed by the court, and that after appraisement, that the land be ordered sold, either at public or private sale, but if at public sale, at the best and highest bid made therefor; and if at private sale, at not less than the appraised value thereof; and that after said sale, that the proceeds of the sale, after payment of any mortgage indebtedness thereon, and after the payment of expenses and costs, including attorney's fees for plaintiffs' attorney, be divided equally between the parties to said action.

In that partition action Thomas answering joined in the prayer of the petitioner, and asked that the land be sold, the debtors paid, and the balance of the proceeds divided between the parties.

The petition for rehearing complains that the opinion says the testimony of Dashner, Haney and Cook, was objected to properly, and motion made to strike. It was not meant by this holding to say that, ordinarily, the defendant in such a case is not permitted to show by such evidence, generally, what was the real contract, but even considering this testimony, under the record in this case, the court would necessarily arrive at the same conclusion as was arrived at in the opinion.

The defendant Dashner now contends he is not liable. He bought in the land. The court record shows that whoever got the land at private sale (and it was), the mortgage was to be assumed, under the pleadings of the parties themselves in the partition case. So Dashner received title to the whole of 240 acres; he also received the rents for 1934; he yet holds the land. And he now attempts to escape everything he prayed for in his petition. This would be unconscionable. Hence, the decision in the opinion is adhered to, and for these reasons, the petition for rehearing is overruled.—Overruled.