[1] The trial was to the court and while there was no transfer to the equity side, it was apparently tried in equity. While the appellant states that the appeal is in equity and should be considered de novo, it also assigns errors as a precaution. In view of our agreement with the facts as found by the trial court, it is not material, for the purpose of this appeal, whether the appeal be treated as de novo, or otherwise. Patten v. Haselton,164 Iowa 645, 146 N.W. 477, 51 L.R.A., N.S., 226. However, since both sides have treated the case as one in equity, both in the trial court and in this court, we will consider the appeal as a trial anew.
The note sued upon was given by the Standard Building Material Company to The Union Trust Company, both Ohio corporations, on or about May 7, 1927. Payment was secured by a mortgage on certain real estate in the city of Cleveland. After certain deferred payments, the balance was due one year after the date of the note. The petition recites the ownership of the note and mortgage by the plaintiff, but the pleadings and proof give no information as to when it was acquired. Appellee, in his argument, refers to the plaintiff as the successor to the payee in the note, and "its liquidating corporation." Each instrument bears the undated indorsement or assignment of the payee-mortgagee, without recourse. We mention these facts because appellant makes some contention that the appellee was estopped to urge his defenses.
The defendant was the treasurer of Curtis Companies, Incorporated, of Clinton, Iowa, for many years. The Standard Building Material Company, above mentioned, became indebted to the Curtis Companies in excess of $100,000, and was rather involved financially, because considerable real estate, which it had sold in 1927, came back on its hands. In order to give its *Page 305 
financial statement a better appearance, the officers of the Union Trust Company advised the Material Company to organize a corporation to hold the company's real estate. It organized The Elber Company for this purpose, and induced the Curtis Companies to transfer $105,000 of its claim from the Material Company to and against The Elber Company, by securing to the Curtis Companies the stock of The Elber Company. Some of the officers of the Curtis Companies became officers and directors of The Elber Company. There were some fears that the Material Company might be thrown into bankruptcy, which might also bring down or seriously involve The Elber Company. The appellee was not an officer or director of the latter company. In 1931, the officers of this company thought it advisable, because of these feared financial difficulties, to organize another corporation to take over the better properties of The Elber Company, which they thought desirable to hold. The property mortgaged to secure the note in suit was one of these properties. Pending the organization of such corporation, it was thought advisable to temporarily place the title to the property in the name of the appellee. At different times the Curtis Companies had placed the title to its real estate in the appellee for convenience, particularly in states where it had not been licensed to do business. The board of directors of The Elber Company, on February 6, 1931, passed a resolution to that effect. The resolution made no mention of the appellee's assuming or agreeing to pay the mortgage on the property. On February 13, 1931, the officers of the company executed its deed conveying this property to the appellee, with the assumption agreement therein. There is no evidence that this deed was delivered to the appellee at the time of its execution. It was at once recorded in Cuyahoga county, Ohio. The president of The Elber Company, who executed the deed and who had come from Clinton to Cleveland to aid in the financial difficulty, testified that he had not talked with the appellee before leaving Clinton about what might be done, or about the execution of this deed, or the assumption of the mortgage, and that so far as he knew, the appellant had no knowledge of any of these matters. He testified that he had come to Cleveland without much preliminary *Page 306 
planning; that there had been no negotiations or consultations with the appellee about the matter at any time; that there had been no talk, at the time of adopting the resolution, that appellee would assume or agree to pay the mortgage, nor was the attorney directed to insert such a clause in the deed; that he had no knowledge that such a clause was inserted in the deed; that the appellee paid nothing to the company as consideration for the deed or the property. It was his opinion that the appellee knew nothing about the deed until he was asked to deed it to the new corporation. After the organization of this corporation, which was known as The Grantland Company, the secretary of The Elber Company sent a prepared deed conveying this particular tract to The Grantland Company, to Mr. Rievers at Clinton, the assistant treasurer of the Curtis Companies, with instructions that he have the appellee and his wife execute it. This was on May 2, 1931. Rievers testified that when he presented the deed to appellee he refused to sign it, saying that he had no knowledge of owning that property, and he wished to see the deed to him so that he could check the description. This deed was then sent from Cleveland to Mr. Rievers, who testified that when he received it he sent it to the appellee, "and after I checked it, he took my word for it that the description was correct." This deed was then placed in The Elber Company files in custody of the witness. The description of the property is a rather involved metes and bounds one, covering a page of the abstract. The appellee and his wife then executed and acknowledged the deed to The Grantland Company on May 25, 1931, in Rievers' office. This deed also contained an assumption clause. The appellee received 45 of the 50 shares of the capital stock of The Grantland Company in exchange for the deed. On the day of its receipt, he assigned this stock to the Curtis Companies, which was the real party in interest and which owned all of the stock and the assets of The Elber Company and The Grantland Company.
[2] The defendant, in his answer, as an equitable defense, set out the substance of these defensive matters, alleging therein that there was never any agreement or understanding between him and The Elber Company that he was to pay the mortgage indebtedness; that the inclusion of the assumption *Page 307 
clause was a mistake or inadvertence of the scrivener; that he simply held the naked title, as a conduit between the two corporations, and that he received no consideration for the assumption agreement. The plaintiff filed no reply to the answer. There were some payments made on the note, but there is no evidence that the appellee made any of them.
The defendant was not a witness at the trial which was in September 1939. To explain his absence, his attorney put the defendant's attending physician on the stand. He testified that the defendant had an apoplectic stroke about 6 years before; that his blood pressure was high, and higher, by 20 points at the time of the trial, than it had been the month before; that what work he did at the office (about an hour a week) was against his advice; and that considering his physical condition and age (75 years) it would be dangerous for him to be examined as a witness.
The appellant asserts that the court erred for the reason that said evidence and the record as a whole, as a matter of law, was sufficient to establish that the appellee had ratified the deed and the assumption clause, and is estopped to raise the defenses pleaded, or, if not as a matter of law, the long silence of the appellee was sufficient to establish the weight of the evidence in the appellant's favor. The burden was upon the appellee to overcome the recital in the deed, which was sued upon. While the burden, under the law, is not a light one, and ought not be, we are satisfied that the appellee sustained it with the quality and quantum of evidence required by our decisions. The appellant has cited Bennett Savings Bank v. Smith, 171 Iowa 405, 152 N.W. 717; Smith v. Godfrey, 200 Iowa 768, 205 N.W. 366; Carney v. Jacobson,210 Iowa 485, 231 N.W. 436; First Trust Joint Stock Land Bank v. Thomas, 223 Iowa 1018, 274 N.W. 11; Royal Union Life Ins. Co. v. Hughes, 205 Iowa 563, 218 N.W. 251; Monticello State Bank v. Schatz, 222 Iowa 335, 268 N.W. 602; and Bridges v. Sams, 202 Iowa 310, 202 N.W. 558. We fully agree with the statements of law therein on this question, but believe they are not controlling under the record in this case.
The record discloses, with respect to the appellant's claim of ratification and estoppel, that neither of these matters were pleaded by the appellant as against the pleaded defenses of appellee. Both were affirmative matters, and facts in support thereof *Page 308 
should have been pleaded and proved by appellant. Cloud v. Malvin, 108 Iowa 52, 75 N.W. 645, 78 N.W. 791, 45 L R.A. 209; Securities Inv. Corp. v. Noltze, 222 Iowa 678, 269 N.W. 866; Dierksen v. Pahl, 194 Iowa 713, 719, 190 N.W. 423, 426; Ransom 
Co. v. Stanberry, 22 Iowa 334. There is no basis in the record to support an issue of estoppel. It is not shown that the appellant took or changed its position to its prejudice by reason of the presence of this assumption clause in the deed to appellee. From all that the record shows, whatever rights the appellant had in the note and mortgage may have been acquired prior to the execution of the deed in February 1931. There is no controversy between the parties to the deed. The grantor concedes that the assumption clause had no proper place therein. The status of the appellant is not unlike the holder of the mortgage in Shult v. Doyle, 200 Iowa 1, 201 N.W. 787, who was seeking to hold grantees in a deed, which contained an assumption clause not contracted for. Justice Evans said, on pages 8 and 9 of the Iowa Report:
"As to the plaintiff herein, his rights are subordinate to the real agreement entered into, as between the defendants. His rights are purely legal. They do not arise out of any equity. They spring alone from the express agreement of the parties, made in his behalf as a third person. Peters v. Goodrich, 192 Iowa 790
[185 N.W. 903]. The cause of action thus created in his favor is a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. He is entitled to it, such as it is. He has no ground of appeal to equity, either to expand it or to prevent its shrinkage. Nor is his plea of estoppel available to him, as against the very truth. Peters v. Goodrich, 192 Iowa 790 [185 N.W. 903]."
See also Nissen v. Sabin, 202 Iowa 1362, 1366, 212 N.W. 125, 126, 50 A.L.R. 1216, wherein the court said, under issues similar to those here involved:
"When it is determined, either as a result of the reformation of the writing or on competent evidence, where reformation is not necessary, that there was no agreement on the part of the appellee to assume and pay the mortgage, it is the end of the controversy." *Page 309 
We think the trial court correctly determined and decided all issues of law and fact, and that its judgment and decree should be, and it is affirmed. — Affirmed.
RICHARDS, C.J., and MITCHELL, STIGER, SAGER, HAMILTON, HALE, OLIVER, and MILLER, JJ., concur.